**FEDERAL DEPOSIT INSURANCE COR-PORATION, as Manager of the FSLIC Resolution Fund, Plaintiff,**

v.

**Paul Sau–Ki CHENG, et al., Defendants.**

**Civ. A. No. 3–90–0353–H.**

United States District Court,
N.D. Texas,
Dallas Division.

July 1, 1991.

Jim D. Hamilton, Steven L. Weathered, Ross, Banks, May, Cron & Cavin, Houston, Tex., John C. Hammock, Sr. Atty., Thomas Schulz, Asst. Gen. Counsel, Loretta Pitt and Floyd Robinson, Sr. Counsel, Dina L. Biblin, Federal Deposit Ins. Corp., Legal Div., Thomas J. Loughran, Douglas G. Thompson, Jr., Judith Heatherton, Finkelstein, Thompson & Loughran, Washington, D.C., for plaintiff.

Terry N. Christensen, Terry D. Avchen, Christensen, White, Miller, Fink & Jacobs, Los Angeles, Cal., Jerry K. Warren, Timothy P. Woods, Clements, Allen & Warren, Dallas, Tex., for defendants Cheng, Guar. Holding, Pacific Realty, Pacific Realty/New York Corp. and The Lau Trust.

Kenneth R. Wynne, Wynne & Maney, Houston, Tex., Gary D. Wilson, Jeffrey E.

McFadden, Wilmer, Cutler & Pickering, Washington, D.C., for defendants E.F. Hutton & Co., Shearson Lehman Bros., Inc. and Shearson Lehman Hutton Holdings, Inc.

Timothy A. Duffy, Burleson, Pate & Gibson, Dallas, Tex., for defendants Heath and Heath Trust.

Joel Held, Mankoff, Hil, Held & Goldburg, Dallas, Tex., for defendants Drexel Burnham Lambert Inc. and Drexel Burnham Lamberg Gov. Securities, Inc.

Marshall Simmons, Dallas, Tex., for defendant Sorensen.

David C. Schick, Sumner & Schick, Dallas, Tex., for defendants Berger, Levin, Lewis and Watts.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court is Plaintiff and counter-defendant Federal Deposit Insurance Corporation's ("FDIC") Motion to Dismiss the Counterclaim, Strike Certain Affirmative Defenses, and Limit Discovery, filed August 27, 1990; Defendants E.F. Hutton and Shearson Lehman Hutton Holdings, Inc.'s (jointly "Hutton") Response, filed September 19, 1990; Defendants Berger, Levin, Lewis, and Watts' Response, filed September 19, 1990; the FDIC's Reply, filed October 31, 1990; Hutton's Surreply, filed May 3, 1991; the FDIC's Supplemental Memorandum, filed April 25, 1991; Hutton's Response, filed May 10, 1991; Hutton's First Amended Counterclaim, filed May 10, 1991; the FDIC's Motion to Dismiss Hutton's First Amended Counterclaim, filed June 7, 1991; and Hutton's Response to the FDIC's Motion to Dismiss the Amended Counterclaim, filed June 24, 1991.

This is an action for money damages and equitable relief brought by the FDIC, as assignee of the claims of Guaranty Federal Savings and Loan Association ("Guaranty Federal"), to recover bond trading losses suffered by Guaranty Federal, an insolvent institution that was placed into receivership on September 30, 1988. In its First Amended Complaint, filed February 26, 1990, the FDIC asserts claims for securities, commodities, and common law fraud, breach of contract, breach of fiduciary duty, and negligence in connection with the purchase and sale of securities and commodity futures contracts. These claims arose in part out of bond trading conducted on behalf of Guaranty Federal in an account with Hutton.

The defendants in this case include Paul Sau–Ki Cheng and Simon Edward Heath, the sole shareholders and co-chairmen of Guaranty Federal; entities owned or controlled by Cheng and Heath; Berger, Levin, Lewis, and Watts, four salesmen employed by Hutton; and their employer, Hutton.[1]

The FDIC brings this action as assignee of the claims of Guaranty Federal. Hutton has filed a counterclaim seeking recoupment from the FDIC for any damages for which Hutton is liable. The counterclaim is directed toward the activities of the Federal Home Loan Bank Board ("FHLBB") and the Federal Savings and Loan Insurance Corporation ("FSLIC") acting as regulatory agent of the FHLBB.

On August 27, 1990 the FDIC filed its motion (1) to dismiss the counterclaim of Hutton, (2) to strike certain affirmative defenses and limit discovery of defendants Hutton and Robert Keith Berger, Robert Alex Levin, Andrew Joseph Lewis, and Roger Wayne Watts, and (3) to limit discovery. Hutton subsequently amended its counterclaim after the Supreme Court issued its decision in *United States v. Gaubert*, — U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335, (1991), which effectively dissolved one of Hutton's theories of FDIC liability. Although Hutton's amended counterclaim states claims that appear to be beyond the protection afforded the FDIC by the *Gaubert* decision, the factual basis for the amended counterclaim is no different from that of the original counter-

---

**1.** The complaint also names as defendants Drexel Burnham Lambert, Inc. and a related corporate entity ("Drexel") and one of its salesmen, Michael R. Sorensen. The Drexel defendants have all filed for protection in bankruptcy, so this action is stayed as to them.

claim. Likewise, the FDIC's new motion to dismiss incorporates many of the arguments of its original motion. Accordingly, although Hutton's amended counterclaim is at issue here, the Court necessarily addresses arguments and authorities from earlier pleadings.

In its answer, Hutton asserts ten affirmative defenses. In addition to moving to dismiss Hutton's counterclaim, the FDIC moves to strike (1) the fifth affirmative defense of contributory/comparative negligence; (2) the seventh affirmative defense of waiver and estoppel; (3) the eighth affirmative defense of unclean hands; (4) the ninth affirmative defense of ratification; and (5) the tenth affirmative defense of *in pari delicto*. The FDIC also moves to strike the same affirmative defenses alleged by Berger, Levin, Lewis, and Watts.

For the reasons stated below, the FDIC's motion is GRANTED in part and DENIED in part.

### I. Background.

In 1984, the FHLBB approved the sale of Guaranty Federal to Defendants Cheng and Heath and its conversion from a mutual savings and loan association to a capital stock savings and loan association. After their acquisition of Guaranty Federal, Cheng and Heath acted as co-chairmen and controlled the operations of Guaranty Federal.

On September 30, 1988, the FHLBB issued Resolution No. 88–1055 finding Guaranty Federal to be insolvent, closed the institution, and appointed FSLIC as its Receiver.[2] As Receiver of Guaranty Federal, the FSLIC succeeded to all the rights, titles, powers, and privileges of Guaranty Federal and its officers and directors.

On September 30, 1988, immediately after its appointment, the Receiver sold to the FSLIC in its corporate capacity certain assets including, without limitation, all right, title and interest in and to any claims arising out of the events occurring prior to September 30, 1988 against, *inter alia*, officers and directors and outside professionals who provided services to Guaranty Federal, including any securities or commodities dealer or person acting for or in concert with Guaranty Federal. The Receiver transferred Guaranty Federal's remaining assets to a newly-chartered federal stock savings bank, Guaranty Federal Savings Bank, Dallas, Texas.

The FHLBB and FSLIC were abolished on August 9, 1989, pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, § 401(a)(1), (2), 103 Stat. 183 (1989) (codified at various sections of Titles 12 and 15, United States Code). Prior to the enactment of FIRREA, and during the time the events alleged in the counterclaim took place, the FHLBB was the regulatory agency in charge of federally chartered savings institutions and the operating head of the FSLIC, a corporate government agency charged with insuring accounts of all federally chartered savings and loan associations.[3] With the enactment of FIRREA, the assets and liabilities of the FSLIC, including all claims, were transferred to the newly created FSLIC Resolution Fund.[4] The FSLIC Resolution Fund is

---

**2.** All allegations in the counterclaim address the time period prior to the closing of Guaranty Federal and therefore relate only to the regulatory activity of the FHLBB; they do not relate to the FSLIC after the assignment of the claims from Guaranty Federal. The Court refers to the FSLIC throughout this opinion because Hutton's amended counterclaim frequently refers to both agencies.

**3.** Section 401(a)(2) of FIRREA abolished the FHLBB. The Office of Thrift Supervision ("OTS") was created by FIRREA to replace the regulatory function of the FHLBB. *See* 12 U.S.C. §§ 1462, 1464(a)(1). The OTS is therefore the statutory successor to FHLBB.

**4.** Numerous cases hold that the FDIC succeeds to the rights of the FSLIC with respect to receiverships created prior to the enactment of FIRREA. *See Carrollton–Farmers Branch Independent School District v. Johnson & Cravens, 13911, Inc.,* 889 F.2d 571, 572–73 (5th Cir.1989) (citing *Triland Holdings & Co. v. Sunbelt Service Corp.,* 884 F.2d 205, 207–08 (5th Cir.1989)); *Federal Deposit Insurance Corp. v. Gillard,* 740 F.Supp. 427, 428 (N.D.Tex.1990); *Triland Investment Group v. Federal Deposit Insurance Corp.,* 735 F.Supp. 698, 699–700 & n. 2 (N.D.Tex.1990).

managed and separately maintained by the FDIC.

As Manager of the FSLIC Resolution Fund, the FDIC operates in two legally distinct capacities. With respect to Guaranty Federal and other failed financial institutions for which the FSLIC was appointed receiver prior to January 1, 1989, the FDIC has taken over the receivership function of administering the assets and liabilities of each individual receivership estate. In performing the functions of a receiver, the FDIC accounts for, manages, and controls the assets and liabilities of each individual receivership separately from the other assets of the FSLIC Resolution Fund. In addition to administering individual receiverships, the FDIC functions in a separate capacity, as manager of the entire FSLIC Resolution Fund, also known as its corporate capacity. This lawsuit was brought by the FDIC as statutory successor to FSLIC/Corporate, which was the assignee of the claims of Guaranty Federal prior to FIRREA.

The FDIC's complaint alleges that Cheng and Heath devised a plan involving highly speculative trading in government bonds in order to enrich themselves at the expense of Guaranty Federal, its depositors, and other creditors. As part of the scheme, Cheng and Heath used securities trading accounts in the names of Guaranty Federal and Pacific Realty Corporation ("PRC"), a private corporation completely owned by Cheng and Heath. The trading in the accounts of Guaranty Federal and PRC was allegedly manipulated after the fact so that losing trades were allocated to Guaranty Federal's accounts and profitable trades were allocated to PRC's accounts.

The complaint also alleges that Cheng placed orders for government bond purchases and sales through Hutton without designating the accounts for which the trades were intended until well after the trade had been made and the direction of price movement was known. In addition, the complaint alleges that the bond trading, even apart from the fraudulent allocation scheme, was extremely risky, excessively speculative, and constituted a grossly unsafe and unsound practice.

During the eight-month period of the alleged trading scheme, from September 1986 through April 1987, Guaranty Federal suffered estimated trading losses in excess of $19,000,000 in connection with the trading through its account with Hutton. Moreover, after the trading scheme period, Guaranty Federal lost an additional $33,300,000 from the subsequent sale of "underwater" bonds that it had previously acquired through Hutton as a result of the scheme. In short, all of the losses underlying this lawsuit allegedly were caused by the bond trading scheme. The complaint alleges that during the same period PRC—Cheng and Heath's private holding company—realized profits in excess of $7.6 million in connection with the very same bond trading through its account with Hutton.

In addition to Cheng and Heath, the complaint names as defendants Berger, Levin, Lewis, and Watts, who were employed in Hutton's Tampa, Florida office and handled the trading accounts of both Guaranty Federal and PRC. The complaint alleges that the four Hutton brokers knew, or were reckless in not knowing, because of their direct involvement in the placing of orders initially and the subsequent designation of trades to either the account of Guaranty Federal or PRC, that a fraudulent trade allocation scheme was being perpetrated. The complaint further alleges that the four Hutton brokers actively participated in the scheme as primary violators along with Cheng and Heath, or, alternatively, aided and abetted the scheme by providing substantial assistance. The complaint also alleges breach of fiduciary duty and negligence on the part of the four Hutton brokers. The FDIC argues that Hutton is liable for the acts of its broker-employees on grounds of controlling person liability and *respondeat superior*.

In its original counterclaim Hutton alleged that the FHLBB and FSLIC went beyond their regulatory roles and actually assumed operational control of Guaranty Federal from the outset of Cheng and Heath's installation as owners of the thrift.

Hutton alleged that the FSLIC assumed operational day-to-day control over Guaranty Federal, including the promulgation and imposition of the operating policies contained in the board resolutions approving the sale of the thrift to Cheng and Heath. In addition, Hutton's first counterclaim alleged that the federal regulators participated or acquiesced in the bond trading activities until they ordered Guaranty Federal to cease the bond trading in April 1987 even though Guaranty Federal was not operating under a conservatorship, receivership or consent agreement at that time.

Hutton's original counterclaim also alleged that the FSLIC's operational control of Guaranty Federal was formalized in October 1987 when it removed Cheng and Heath as officers and directors of the thrift and began managing and operating the thrift under the consent agreement approximately one year before Guaranty Federal's bond position was liquidated and the institution was declared insolvent.[5]

Based on these allegations of extra-regulatory activity by the FHLBB and FSLIC in assuming operational, day-to-day control of Guaranty Federal, Hutton originally alleged that the FSLIC assumed a duty to exercise reasonable care in the operation of the institution. Hutton alleged that the FSLIC or its operating head, the FHLBB, breached this duty when they allowed Cheng and Heath to continue the speculative bond trading, knowing of the potential effect on the financial condition of the thrift; violated or failed to enforce various regulations and agreements; chose not to cease or modify the bond trading scheme until May 1987; and then elected to cause an immediate and illusory loss to Guaranty Federal by liquidating the bond portfolio in

August 1988 before declaring the institution insolvent.

Hutton's claims based on the theory that the FSLIC assumed operational, day-to-day control of Guaranty Federal were expressly grounded on the Fifth Circuit's decision in *Gaubert v. United States*, 885 F.2d 1284 (5th Cir.1989),[6] and ultimately were defeated by the Supreme Court's reversal of that Fifth Circuit decision. *See United States v. Gaubert*, —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Hutton's First Amended Counterclaim, filed May 10, 1991, recites the same factual scenario, but states that Hutton's counterclaim in recoupment is grounded on the FHLBB's violation of various agreements executed by Guaranty Federal and the federal regulators pursuant to three FHLBB resolutions issued on September 5, 1984. (The Supreme Court's decision in *Gaubert* did not destroy this theory of FDIC liability.) In particular, Hutton relies on the FHLBB's failure to enforce the Net Worth Agreement executed pursuant to FHLBB Resolution No. 84–491, which required Guaranty Federal to maintain a net worth of 1½% of its total unaveraged liabilities. Because the regulators did not enforce this Agreement, alleges Hutton, Guaranty Federal was declared insolvent and liquidated, ultimately resulting in this lawsuit against Hutton.

But for the violation and/or waiver of applicable regulations, Guaranty Federal's capitalization would have been stronger, and it would have been in a stronger financial position. FSLIC and/or FHLBB allowed or caused Guaranty Federal to operate with inadequate capitalization and in a weakened financial position in violation of applicable regulations. To the extent that FDIC recovers

---

**5.** Hutton did not mention the obvious possibility that the removal of Cheng and Heath, rather than formalizing the regulators' control, signalled the end of mere supervision and the start of the regulators' "operational control" of Guaranty Federal.

**6.** Hutton's Response to the FDIC's motion to dismiss Hutton's original counterclaim stated the following.

    As stated in the Counterclaim, Hutton is not contending that the negligent actions of the

FSLIC and the FHLBB occurred while the regulators were carrying out normal regulatory functions. Rather, Hutton alleges that the FSLIC and the FHLBB assumed actual "operational control" of Guaranty Federal, and thereby assumed a duty to operate the institution in a non-negligent manner. *See Gaubert v. United States*, 885 F.2d 1284 (5th Cir.1989), *cert. granted*, [496 U.S. 935], 110 S.Ct. 3211 [110 L.Ed.2d 659] (1990).

Hutton's Response at 11.

any damages against Hutton or Holdings for their alleged participation in the alleged "trading scheme," they are entitled to recover from the successor to the liabilities of the FSLIC and the FHLBB on this claim for recoupment any amount of damages assessed against Hutton or Holdings as a result of FSLIC and FHLBB's failure to comply with and enforce the FHLBB's own banking regulations in the Acquisition and ensuing operations of Guaranty Federal.

Hutton's Amended Counterclaim ¶ 18.

The issue presented by the FDIC's motion to dismiss is whether the Court has jurisdiction over Hutton's counterclaim or whether it is barred by the doctrine of sovereign immunity.[7] The basic question before the Court is whether Hutton brought its counterclaim in recoupment pursuant to the Fifth Circuit's 1967 decision in *Frederick v. United States*, 386 F.2d 481, or whether the FDIC is correct in its contention that the counterclaim is barred by the doctrine of sovereign immunity.

## II. Sovereign Immunity.

■■■ The FDIC's argument is straightforward and can be recited briefly. The FDIC contends that the Court lacks subject matter jurisdiction over Defendants' counterclaim because it is barred by the doctrine of sovereign immunity unless brought pursuant to the terms of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq. See United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941) (holding that the United States has sovereign immunity and can only be sued to the extent to which it consents and only in the manner established by law). The FTCA is the exclusive remedy for tort claims against the federal government, *see* 28 U.S.C. § 2679, and there is no dispute that Hutton's counterclaim sounds in tort. The FDIC is a federal agency within the coverage of the FTCA. *See* 28 U.S.C. § 2671. Pursuant to the FTCA, Hutton's action must be brought against the United States because the FDIC cannot be sued in its own name. *See* 28 U.S.C. § 2679. Therefore, because the United States is not a party to this action, the counterclaim must be dismissed as a matter of law. In addition, Hutton failed to file an administrative claim against the United States before bringing its tort action, as required by the FTCA. *See* 28 U.S.C. § 2675. The counterclaim also must be dismissed because the FTCA expressly excepts from its general waiver of sovereign immunity claims based on an act or omission of a federal employee exercising a discretionary function or duty.[8]

Hutton argues that the FDIC has waived its sovereign immunity by bringing this lawsuit and that Fifth Circuit case law authorizes its counterclaim for recoupment pursuant to the decision in *Frederick v. United States*. For the reasons stated below, the Court finds this contention to be without merit.

## III. Waiver of Sovereign Immunity Under *Frederick*.

■■■ Hutton attempts to evade the FTCA's bar to its action by claiming that it is a counterclaim for recoupment. Hutton's basic authority for its contention that its counterclaim is not barred by the doctrine of sovereign immunity is *Frederick v.*

---

**7.** The FDIC moves to dismiss the counterclaim pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of jurisdiction over the subject matter) and 12(b)(6) (failure to state a claim upon which relief can be granted). Because it is axiomatic that Rule 12(b)(6) also applies where the Court lacks jurisdiction over the subject matter of a claim, the Court addresses only the Rule 12(b)(1) grounds for the FDIC's motion.

**8.** The discretionary function exception to the government's waiver of sovereign immunity reads in pertinent part as follows:

The provisions of [the FTCA] shall not apply to—

(a) Any claim based upon an act or omission of an employee of the government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, and based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

*United States,* 386 F.2d 481 (5th Cir.1967). In *Frederick,* the Fifth Circuit held that

> [t]he waiver [of sovereign immunity] can be by statutory consent to be sued or by the institution of the particular action. Our conclusion is that when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims; but the sovereign does not waive immunity as to claims which do not meet the "same transaction or occurrence test" nor to claims of a different form or nature than that sought by it as plaintiff nor to claims exceeding in amount that sought by it as plaintiff. This ties in with the distinction made in [Federal] Rule [of Civil Procedure] 13 itself. As defined in [Rule] 13(c), a counterclaim may diminish or defeat the recovery sought by the opposing party—this is as far as the government's waiver goes. It may also, but need not, "claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party." The government does not go so far as to waive its immunity to this kind of claim.

*Id.* at 488 (footnotes and citations omitted); *see Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 299, 67 S.Ct. 271, 271, 91 L.Ed. 296 (1946) (stating that the doctrine of recoupment "has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole"); *Bull v. United States,* 295 U.S. 247, 261, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935) (holding in case where United States wrongfully collected estate tax and then sued for collection of income tax that a claim for recovery of the estate tax "may be used by way of recoupment and credit in an action by the United States arising out of the same transaction"); *Federal Deposit Insurance Corp. v. Corning Savings & Loan Ass'n,* 696 F.Supp. 1245, 1247 (E.D.Ark.1988) (defining recoupment as "the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim"); *see generally* 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 1427, at 197 (citing authority and stating that "[d]espite the sovereign immunity doctrine and the language of 13(d), when the United States institutes an action, defendant may assert by way of recoupment any claim arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery").

The basic problem with Hutton's position is that its counterclaim does not meet the requirement of Rule 13(a) and *Frederick* that a counterclaim arise "out of the transaction or occurrence that is the subject of the opposing party's claim". The FDIC correctly contends that Hutton's counterclaim is directed towards the FHLBB's acts as a federal regulator, not toward the FDIC in its capacity as assignee of Guaranty Federal's claim. Thus, the counterclaim is not asserted against the "same party" as Plaintiff.

Hutton's counterclaim concerns only the regulatory activities of the FHLBB, alleging that by approving the sale of Guaranty Federal to Cheng and Heath in 1984 and in its subsequent supervision of the thrift, the FHLBB proximately caused the losses incurred in the alleged trading scheme. These regulatory activities were part of the FHLBB's authority prior to the enactment of FIRREA and are now delegated to the Director of the Office of Thrift Supervision pursuant to FIRREA. *See* 12 U.S.C.A. §§ 1437 (repealed by Section 401 of FIRREA, which abolished the FSLIC and FHLBB), 1462 (establishing OTS and position of Director), 1464(a)(1) (authorizing the

Director of the OTS "to provide for the organization, incorporation, examination, operation, and regulation of ... Federal savings associations"). The allegations against the FHLBB for its preclosing regulatory activities simply do not state a claim, for recoupment or otherwise, against the FDIC.

In arguing that its counterclaim is asserted against the proper party, Hutton relies heavily on a recent decision of the Federal Circuit, *Far West Federal Bank, S.B. v. Director, Office of Thrift Supervision*, 930 F.2d 883 (Fed.Cir.1991). The *Far West* case was an action by a bank and some of its investors and shareholders seeking, among other things, rescission of a conversion agreement under which the bank had operated until the enactment of FIRREA, and restitution of funds that had been invested pursuant to that agreement. The conversion agreement had been entered into by the bank and the pre-FIRREA regulators (including the FHLBB), but after the enactment of FIRREA the OTS contended that the agreement had been abrogated by the new law, imposed new regulations on the bank, and ordered that it be shut down for failing to meet those new requirements.

The government unsuccessfully moved to have the plaintiffs' claim for rescission and restitution severed and tried by the Claims Court. Before the Federal Circuit on appeal of the district court's denial of the government's motion were "the related questions of waiver of governmental immunity from suit and grant of subject matter jurisdiction to the district court: questions that are often treated together, for both must be answered affirmatively to provide jurisdiction." *Id.* at 887.

According to Hutton, the *Far West* court held that "FIRREA's merger of the FSLIC's assets and liabilities into the FSLIC Resolution Fund mooted the technical distinctions on which the FDIC relies" in the present case—that is, the "hyper-technical distinctions among different capacities of the FSLIC, between the FHLBB and the FSLIC, or between the OTS and the FDIC." Hutton's Surreply at 4, 7.

The "hyper-technical distinction" at issue in *Far West*, however, was quite different from the issue presently before the Court. In *Far West*, the government argued that "since some of the money in the FSLIC Resolution Fund is provided by the Treasury as needed, the source [of the funds sought by plaintiffs] is really the general funds of the United States" and proper jurisdiction was in the United States Claims Court. *Far West Federal Bank, S.B. v. Director, Office of Thrift Supervision*, 930 F.2d at 890. The Federal Circuit concluded that the government was wrong, holding that merely because "some of the moneys within the FDIC's control are received from the Treasury does not convert this suit into a suit against the United States, or limit jurisdiction to the Claims Court." *Id.*

Obviously, the "hyper-technical distinction" Hutton attacks in this case is easily distinguishable from the questions addressed by the Federal Circuit in *Far West*. The issue here is whether Hutton is asserting its counterclaim against the proper party and whether its counterclaim truly is one for recoupment. Recoupment was not an issue in *Far West*. As far as the issue of proper parties is concerned, in *Far West* the government argued that the proper defendants were not the FDIC and OTS, but Congress and the United States. The Court quickly disposed of that argument, relying on "the extensive body of law and precedent implementing statutory waivers [of immunity] such as those enacted in the FIRREA." *Id.* at 892. A similar body of FIRREA case law supports the Court's conclusions in the present case. Furthermore, in *Far West* the bank and its investors and shareholders sued the Director of OTS and the Federal Home Loan Bank of Seattle in addition to the FDIC, whereas Hutton has not attempted to make the OTS a party to this lawsuit.

■ In addition to finding that Hutton has asserted its counterclaim against the wrong party, the Court finds that there are no allegations in the counterclaim that could be asserted against the FDIC in the capacity in which it has brought this law-

suit—that is, as assignee of Guaranty Federal's claims. There is no question that the FDIC can operate in separate and independent capacities. *See Federal Deposit Insurance Corp. v. Cuvrell (In re F & T Contractors, Inc.)*, 718 F.2d 171, 176 (6th Cir.1983) (finding that the "FDIC is authorized to act in dual capacities simultaneously"); *Gunter v. Hutcheson*, 674 F.2d 862, 874 (11th Cir.) (citing cases from the Fourth, Sixth, Ninth, and Tenth Circuits and finding that "the FDIC may act in a dual capacity"), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Federal Deposit Insurance Corp. v. Godshall*, 558 F.2d 220, 223 (4th Cir.1977) (stating that "[t]he federal courts have recognized that FDIC may often act in two capacities simultaneously"). Federal case law holds that a counterclaim cannot be asserted against the FDIC in a capacity other than that in which it brings the action. *See Federal Savings & Loan Insurance Corp. v. Smith*, 721 F.Supp. 1039, 1042–43 (E.D.Ark.1989) (citing *Federal Savings & Loan Insurance Corp. v. Williams*, 599 F.Supp. 1184, 1202–04 (D.Md.1984), in holding that defendant "does not assert a recoupment claim because he does not wish to assert an affirmative defense to bar the *plaintiff's* recovery" where he counterclaimed against the United States and the FSLIC was the plaintiff); *Federal Savings & Loan Insurance Corp. v. Burdette*, 696 F.Supp. 1183, 1187–88 (E.D.Tenn.1988) (citing *Godwin v. Federal Savings & Loan Insurance Corp.*, 806 F.2d 1290, 1291 n. 1 (5th Cir.1987), and holding that "[i]n a situation ... where the [FDIC] is suing as a receiver of a failed savings and loan, any claims against it in its corporate capacity are not against it in the capacity in which it is a plaintiff, and those claims do not constitute proper counterclaims or affirmative defenses"); *Federal Deposit Insurance Corp. v. Dempster*, 637 F.Supp. 362, 366 (E.D.Tenn.1986) (striking affirmative defenses brought against the FDIC in a capacity different from that of the FDIC as plaintiff).

In *FDIC v. Berry*, the court stated that where the FDIC brings an action as an assignee of a failed bank's claims,

[t]he FDIC in such capacity steps into the shoes of [the failed bank] as plaintiff in this suit. As such the FDIC/Corporation is not subject to defenses asserted against it for actions prior to the assignment.... Since the ... negligence counterclaims involve actions prior to the assignment upon which this action is based, these defenses and counterclaims as a matter of law are not assertable against the plaintiff.

*Federal Deposit Insurance Corp. v. Berry*, 659 F.Supp. 1475, 1482–83 (E.D.Tenn. 1987). Indeed, in *FDIC v. Manatt*, the court found that a counterclaim directed at the FDIC's acts as regulator in a case brought by the FDIC as assignee of a failed bank's claims was not directed against the same party as the FDIC plaintiff and therefore was independent of the FDIC's cause of action. Accordingly, the *Manatt* court found that the defendant's counterclaim was not a counterclaim in recoupment. *See Federal Deposit Insurance Corp. v. Manatt*, 723 F.Supp. 99, 103–04 (E.D.Ark.1989).

■ Furthermore, Hutton's counterclaim does not arise out of the same transaction or occurrence as the FDIC's claim, an essential requirement for a counterclaim in recoupment. *See Frederick v. United States*, 386 F.2d at 488; *see also Rothensies v. Electric Storage Battery Co.*, 329 U.S. at 299, 67 S.Ct. at 271 (stating that the doctrine of recoupment "has never been thought to allow one transaction to be offset against another"); *Bull v. United States*, 295 U.S. at 262, 55 S.Ct. at 700 (stating that a recoupment claim must arise "out of some feature of the transaction upon which the plaintiff's action is grounded"). Hutton's counterclaim is grounded on acts or omissions of the regulators that were unrelated to the trading scheme giving rise to the FDIC's case; that is, Hutton's counterclaim is grounded on the government regulators' alleged violation of regulations and agreements established years prior to the period of the alleged trading scheme. In particular, the counterclaim relies heavily on the regulators' alleged failure to enforce a Net Worth Main-

tenance Agreement that was executed by Cheng, Heath, and PRC pursuant to FHLBB Resolution No. 84–491, which was issued on September 5, 1984.

If the allegations of the First Amended Complaint are found to be true, FSLIC failed to enforce the various requirements concerning operational standards applicable to Guaranty Federal, and it failed to compel PRC, Cheng and Heath to infuse capital into the institution to maintain the net worth of Guaranty Federal at the required level of at least 1½%. FSLIC further failed to enter into and enforce its various agreements, required by the FHLBB, which it had with PRC, Cheng and Heath. As a result of FSLIC's failure to enforce these contractual terms, Guaranty Federal was declared insolvent and liquidated, and Hutton and Holdings have been subjected to suit by the FDIC for transactions they in no way caused or controlled. To any extent that damages are assessed against Hutton or Holdings for allegedly participating in the alleged "trading scheme," they are entitled to recover that same amount against the FDIC as successor to FSLIC and FHLBB, on this claim for recoupment as a result of FSLIC and FHLBB's failure to enforce their regulatory contracts required with the responsible parties, PRC, Cheng and Heath, including to maintain the net worth of Guaranty Federal and prevent its insolvency.

Hutton's Amended Counterclaim ¶ 20; *see also id.* ¶¶ 7, 9, 13, 19, 26 (alleging violations of the Net Worth Agreement).

Hutton apparently believes that its counterclaim, to the extent that it is based on events that took place years before the trading scheme commenced, is related to the FDIC's claims because there is a logical relationship between the claims and the counterclaim. In *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357 (5th Cir. 1979), the Fifth Circuit held that a "logical relationship" exists between a claim and a counterclaim "when the counterclaim arises from the same 'aggregate of operative facts' in that the same operative facts serves as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* at 1361 (citing *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d 709, 714 (5th Cir.1970)).

A year after *Plant,* the Fifth Circuit applied the "same transaction and occurrence" test to a counterclaim purportedly brought for recoupment against the Equal Employment Opportunity Commission. In that case, the Fifth Circuit held that " '[a] defendant's claim arising out of the same transaction or occurrence as that on which the plaintiff seeks recovery may be recouped, *but there can be no recoupment if the damages claimed by the defendant arise from the breach of an independent contract....*' " *Equal Employment Opportunity Comm'n v. First National Bank,* 614 F.2d 1004, 1008 (5th Cir.1980) (quoting 20 Am.Jur.2d § 69) (emphasis added), *cert. denied,* 450 U.S. 917, 101 S.Ct. 1361, 67 L.Ed.2d 342 (1981).

In the present case, the Court finds that the regulators' allowing Cheng and Heath to buy Guaranty Federal and their establishing rules governing the running of the institution simply are not part of the "aggregate of operative facts" giving rise to the FDIC's present claims. To begin with, the alleged trading scheme took place years after the Net Worth and other agreements were executed. Furthermore, to the extent that Hutton's counterclaim—including that part of the counterclaim most directly relating to the trading scheme—is based on alleged violations of operational standards, the damages claimed arise from the breach of independent contracts and thus cannot constitute a counterclaim for recoupment. As noted above, Hutton brought its "claim for recoupment as a result of FSLIC and FHLBB's failure to enforce their regulatory *contracts* required with the responsible parties, PRC, Cheng and Heath, including to maintain the net worth of Guaranty Federal and prevent its insolvency." Hutton's Amended Counterclaim ¶ 20 (emphasis added); *see id.* (alleging failure to enforce "various contractual terms" of "various agreements" between

FSLIC and PRC, Cheng, and Heath). Not only were these contracts executed long before the start of the alleged trading scheme, but Hutton was not even a party to them. They clearly constitute "independent contracts" under the ruling of *EEOC v. First National Bank.*

■ The final problem with Hutton's argument under *Frederick* is that in order to have a counterclaim in recoupment Hutton must first have a claim, because a counterclaim is a "claim which at the time of serving the pleading the pleader has against any opposing party...." Fed. R.Civ.P. 13(a). Obviously, a party cannot bring as a counterclaim, in recoupment or otherwise, allegations which do not constitute a claim. In the case of Hutton's counterclaim, there is no indication of what duty the FDIC (or FHLBB or FSLIC) may have had to Hutton either in regulating Guaranty Federal or in liquidating its assets after it was declared insolvent. Indeed, Hutton does not even allege that it had a relationship with the federal regulators that could have given rise to a duty of due care. Without such a duty, Hutton has no counterclaim. Hutton's argument that it is irrelevant whether the FDIC owed Hutton a duty of care is unconvincing, and Hutton cannot cite a case supporting its position that a counterclaim in recoupment may be asserted absent a necessary element of a claim.[9]

In short, Hutton's counterclaim against the FDIC must fail as a matter of law because it has failed to assert a proper counterclaim in recoupment under *Frederick.* Because Hutton's counterclaim is not for recoupment, it must be dismissed for lack of subject matter jurisdiction pursuant to the Federal Tort Claims Act. Accordingly, the FDIC's motion to dismiss Hutton's counterclaim is GRANTED.

■ The Court concludes this discussion by noting that the heart of Hutton's counterclaim is the allegation that the regulators should have, but did not, put a stop to the alleged bond trading scheme or make sure Guaranty Federal was not in such a precarious financial condition. Hutton's argument essentially is that if the regulators had acted properly Guaranty Federal would not have failed and Hutton would not be facing this lawsuit.[10] "In the end, [Hutton's counterclaim] alleges nothing more than negligence on the part of the regulators." *United States v. Gaubert,* 111 S.Ct. at 1279. The actions of which Hutton complains were taken as part of the regulators' attempt to preserve a financial institution in distress. Hutton's argument is that the regulators did not close down Guaranty Federal fast enough and thereby prevent Hutton from allegedly participating in the trading scheme of 1986–1987, or at least prevent the bank from going under. There simply is no question that the acts challenged by Hutton "were directly related to public policy considerations regarding federal oversight of the thrift industry," *id.,* and therefore are covered by the discretionary function exception to the Federal Tort Claims Act's waiver of sovereign immunity. In other words, even if Hutton had properly sued the United States under the FTCA it is very likely that *Gaubert* would have operated to defeat its claim.

## IV. Affirmative Defenses.

Because Hutton's Response, joined by Berger, Levin, Lewis, and Watts, states that its affirmative defenses relate only to the knowledge and actions relate only to the actions of Guaranty Federal and do not concern alleged acts or omissions of the

9. In addition, the Court notes that Hutton seems to contend that a counterclaim in recoupment is proper not because the FDIC injured Hutton, but because the regulators' alleged breach of the Net Worth Agreement resulted in Hutton being sued by the FDIC rather than by Guaranty Federal. *See* Hutton's Amended Counterclaim ¶ 20 ("As a result of FSLIC's failure to enforce these contractual terms, Guaranty Federal was declared insolvent and liquidated, and Hutton and Holdings have been subjected to suit by the

FDIC for transactions they in no way caused or controlled.").

10. An alternative, if implausible, interpretation of Hutton's amended counterclaim is that Hutton complains not of the regulators' alleged negligent supervision of Guaranty Federal, but of their nonnegligent acts of closing and liquidating the institution—the acts that Hutton alleges caused its present troubles. The Court sees no merit in such claims.

FSLIC or FHLBB, *see* Hutton's Response at 24–25, the FDIC does not object to affirmative defenses five, seven, eight, nine, and ten. *See* FDIC's Reply at 1–2. Accordingly, because the FDIC did not formally withdraw the motion, the FDIC's motion to strike those affirmative defenses is DENIED.

### V. Motion to Limit Discovery.

Because Hutton's counterclaim must be dismissed, the FDIC's motion to limit discovery as to the counterclaim is GRANTED. Because the FDIC does not object to Defendants fifth, seventh, eighth, ninth, and tenth affirmative defenses, the FDIC's motion to limit discovery as to the issues raised by those defenses is DENIED.

### VI. Conclusion.

For the reasons stated above, the FDIC's motion to dismiss the amended counterclaim of E.F. Hutton Company, Inc. and Shearson Lehman Hutton Holdings, Inc. is GRANTED pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Hutton's amended counterclaim against the FDIC is hereby DISMISSED. The FDIC's motion to strike certain affirmative defenses is DENIED. The FDIC's motion to limit discovery is GRANTED as to the counterclaim and DENIED as to the affirmative defenses.

SO ORDERED.