FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,

v.

Richard A. BEÑJES, Defendant.

Civ. A. No. 91–2340–JWL.

United States District Court,
D. Kansas.

Feb. 5, 1993.

Nancy S. Anstaett, McAnany, Van Cleave & Phillips, P.A., Lenexa, KS, Lawrence D. Greenbaum, Katherine E. Rich, Charles A. Getto, Clifford K. Stubbs, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for plaintiff.

Steven J. Braun, Kenneth J. Reilly, McDowell, Rice & Smith, P.C., Overland Park, KS, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

*I. Introduction.*

This matter is currently before the court on plaintiff FDIC's Motion for Summary Judgment (Doc. # 76). Plaintiff's motion is directed at certain affirmative defenses, including statute of limitations and comparative causation or fault, which defendant

pleaded in his answer. Oral argument on plaintiff's summary judgment motion was held before the court on January 25, 1993. At the oral argument, and through responsive pleadings, the parties more specifically defined the issues pertinent to plaintiff's summary judgment motion. Those issues are: (1) whether defendant has a valid statute of limitations defense to plaintiff's claims; (2) whether defendant can assert the FDIC's failure to mitigate damages as a defense; (3) whether the negligence of officers and directors of the Sylvia State Bank may be imputed to the FDIC for purposes of apportioning fault; and (4) whether defendant's negligence should be compared with that of the other officers and directors of Sylvia State Bank in apportioning fault.

For the reasons set forth in this Memorandum and Order, plaintiff's motion is granted as to defendant's statute of limitations defense, any failure to mitigate defense, and defendant's ability to impute fault of bank officers and directors to the FDIC. However, plaintiff's motion is denied as to the defendant's ability to apply comparative fault principles to compare his negligence with that of the bank directors and officers in apportioning fault. The defendant will be permitted to compare the fault of those non parties at the trial of this case.

## II. Factual Background.

Prior to September 8, 1988, the Sylvia State Bank, Sylvia, Kansas (hereinafter the "Bank"), was a federally-insured banking institution organized and existing under the laws of the State of Kansas. Between 1972 and 1988, defendant Richard A. Benjes served as a director and legal counsel for the Bank. Defendant's legal work for the Bank during this period included collection matters for the Bank, advice on loans issued by the Bank, representation on employee termination matters, representation on consumer credit issues, representation on amendments to Bank by-laws, and other miscellaneous duties.

On September 8, 1988, the Kansas State Bank Commissioner determined that the Bank was insolvent, ordered the Bank closed, and took possession and control of its assets for the purpose of liquidation through receivership. The FDIC was appointed receiver of the Bank on that same date.

On September 6, 1991, the FDIC, in its corporate capacity, commenced this action for legal malpractice. In its complaint the FDIC alleges that defendant, as attorney for the Bank,[1] committed acts of gross negligence, negligence, and breach of fiduciary duty in connection with loans made by the Bank to the Nelson Music Company and various other related lines of credit. Among the specific acts of negligence and breach of fiduciary duty alleged in the Complaint are: (1) that defendant established or acquiesced in the establishment of practices and patterns which were not in the best interests of the Bank; (2) that defendant failed to recognize that certain transactions were prohibited by regulations; (3) that defendant failed to recognize or report improper conduct to disinterested directors and officers of the Bank; (4) that defendant failed to advise disinterested directors and/or officers of the extent and implications of the Bank's acceptance of retail sales paper and participation agreements for the benefit of Nelson Music; (5) that the defendant participated in, or assisted the Bank in, transactions prohibited by law or regulations; (6) that the defendant represented the Bank on transactions in which he had multiple conflicts of interest, failed to exercise independent professional judgment, and failed to discharge his duty of undivided loyalty to the Bank; and (7) that defendant failed to advise the Board of Directors to obtain outside counsel to review the Nelson Music line of credit.

## III. Statute of Limitations.

The defendant has pleaded the statute of limitations as a defense to all three counts of the Complaint. In determining whether causes of action asserted by the FDIC against former directors, officers, employees and agents of a failed financial institution are timely filed, this court applies a two-stage analysis. The court must first de-

---

1. The FDIC has sued defendant only in his capacity as legal counsel to the Bank. Defendant has not been sued in his capacity as a director of the Bank.

termine whether those causes of action were time-barred under the applicable Kansas statute of limitations at the time the FDIC acquired the claims. *F.D.I.C. v. Thayer Insurance Agency, Inc.,* 780 F.Supp. 745, 747 (D.Kan.1991); *F.D.I.C. v. Ashley,* 754 F.Supp. 179, 182–83 (D.Kan.1990); *F.D.I.C. v. Hudson,* 673 F.Supp. 1039, 1041 (D.Kan. 1987). If a claim is viable under state law at the time the FDIC acquires it, then the claim is not barred and the "state statute of limitations ceases to operate and the federal period of limitation .. begins." *F.D.I.C. v. Hudson,* 673 F.Supp. at 1041. The applicable federal limitations period in this case is six years for contract claims and three years for tort claims. *See* 12 U.S.C. § 1821(d)(14)(A); *F.D.I.C. v. Thayer Insurance Agency, Inc.,* 780 F.Supp. 745, 748–49 (D.Kan.1991).

■ All of the loans under dispute in this case were made between January 11, 1988 and July 5, 1988. Therefore, it is apparent that the state law limitations period had not expired prior to the time the FDIC was appointed receiver on September 8, 1988. Additionally, because this action was brought on September 6, 1991, which is within three years of the date the FDIC was appointed receiver, none of the actions brought by the FDIC are time-barred by the federal period of limitation. Therefore, the FDIC's motion for summary judgment shall be granted as to defendant's statute of limitations defense.[2]

## IV. FDIC'S Failure to Mitigate.

Although the defendant does not specifically refer to a "failure to mitigate" defense, such a defense could be inferred from defendant's statement in his answer that the loss was sustained as the direct and proximate result of the negligent, grossly negligent and/or intentional acts of others. To the extent defendant's answer does raise a failure to mitigate defense against the FDIC, the court finds that such a defense will not be allowed.

■ Reliance on post-bank closing collection activities of the FDIC is not an appropriate defense to a professional malpractice action. Several rationales have been advanced for the legal insufficiency of a failure to mitigate defense in these circumstances, including: (1) there is a public policy implicit in the federal statutes creating the FDIC, FSLIC and RTC that the public should not bear any losses due to errors in judgment by federal receivers or conservators (*Federal Sav. & Loan Ins. Corp. v. Burdette,* 718 F.Supp. 649 (E.D.Tenn.1989)); (2) the conduct of the FDIC, FSLIC or RTC in fulfilling its mandate, which includes marshalling the assets of a failed financial institution, should not be subjected to judicial second guessing (*F.D.I.C. v. Isham,* 782 F.Supp. 524, 532 (D.Colo.1992)); and (3) the absence of duty between the FDIC and former officers and directors of a failed institution—the no-duty rule—means that government conservators or receivers are insulated from affirmative defenses which place in issue their conduct after assuming control of the institution's assets (*FDIC v. Isham,* 782 F.Supp. at 532).

The court finds these arguments to be persuasive and holds that the FDIC is granted summary judgment to the extent defendant's claimed defenses include the FDIC's failure to mitigate damages.[3]

## V. Imputing the Negligence of the Bank's Former Directors and Officers to the FDIC.

■ In the initial briefs filed by the parties relating to this motion, there appeared to be an issue as to the ability of the defendant to impute the intentional and negligent acts of the Bank's former directors and officers to the FDIC, thereby reducing, or possibly eliminating, his liability for legal malpractice. However, at oral argument on plaintiff's motion, the defendant agreed that he does not seek to impute the alleged negligent acts and omissions of the Bank's former officers and directors to the FDIC. As the court believes this is the correct application of the law, plaintiff's summary judgment motion will be

---

2. It should be noted that the defendant virtually conceded this issue in its response brief and at oral argument.

3. It should also be noted that the defendant did not contest this result either in its papers or at oral argument.

granted to formally preclude defendant from attempting to impute the negligence of the Bank's former directors and officers to the FDIC.

Judge Belot dealt with this issue extensively in *Comeau v. Rupp*, 810 F.Supp. 1127, (D.Kan.1992). *Comeau* involving a professional malpractice action against outside accountants of a failed savings and loan association. The defendant accountants asserted as a defense that the alleged wrongful actions of the majority owners, president, and directors of the thrift must be imputed to the FDIC, as successors in interest to the Comeaus, for purposes of asserting the defense of contributory negligence.[4] Judge Belot rejected this contributory negligence defense. Specifically, the court held that, even assuming alleged wrongful conduct by the former owners and directors of a thrift was undertaken to benefit the institution (such that, ordinarily, the director's acts would be imputed to the institution), considerations of federal common law precluded attribution of this conduct to the FDIC. *Id.* Unlike the situation where a corporation sues its accountants or attorneys for losses attributable in whole or in part to wrongdoing of the corporation's management, the beneficiaries of a verdict for the FDIC in a professional malpractice action are not the shareholders of the corporation. Rather, it is the public which so benefits and the public "had no voice in hiring or electing ... [the thrift's] officers and director, nor even in becoming the assignee of certain of ... [the thrift's] assets and liabilities." *Id.* Judge Belot went on to state:

> Thus, the status of the FDIC in this case is more akin to that of a creditor, rather than a stockholder or a voluntary assignee of the association. If the court were to treat plaintiff-FDIC as a stockholder ... then the public would be made to pay for wrongs that it was in no real position to prevent, and that have been visited upon it by the very persons who owe it a heightened fiduciary duty. Such a policy would defeat rather than further the tort principle of compensating the victim, while doing

nothing either to deter culpable parties from refraining from tortious conduct, or to encourage the shareholders to employ more trustworthy corporate managers.

> Nor does the court find any inequity in withdrawing from the Accountants' litigation arsenal a defense that would normally be available ... [T]he relief sought by the Accountants would come into play only upon plaintiff's initial showing of some culpable conduct on the part of the Accountants. But by imputing to the FDIC the torts of RCSA's officers, the Accountants would shift their liability for plaintiff's losses to the FDIC. Thus, this is not a case where a wholly innocent party will be called upon to pay for a loss caused by another. To the contrary, allowing the FDIC to disavow the wrongful acts of RCSA's former officers prevents *culpable* parties from transferring liability for their tortious conduct to an entity that is indisputably without fault in bringing about RCSA's losses: the public, in the person of the FDIC.

*Id.* (emphasis in original) (citations omitted).

The Ninth Circuit addressed this identical issue in *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744 (9th Cir.1992). That case involved a legal malpractice claim against an outside attorney for a failed savings and loan association. The court held that fraud and wrongdoing of the thrift's former officers could not be imputed to the FDIC by the defendant attorneys because "the equities between a party asserting an equitable defense and a bank are at such variance with the equities between the party and a receiver of the bank." *Id.* at 751–52. The policy reasons relied on by the court included: (1) that the FDIC does not voluntarily step into the shoes of the bank but rather is "thrust into those shoes"; (2) that the FDIC was not a party to any inequitable or wrongful conduct of the thrift's directors and officers "nor is it in a position to take action prior to assuming the bank's assets to cure any associated defects or force the bank to pay for incurable

---

4. *Comeau* was a pre-comparative fault case due to the fact that the actions allegedly causing injury occurred prior to the effective date Kan-

sas' comparative fault statute covered claims for purely economic loss.

defects"; and (3) that the FDIC becomes the thrift's successor as part of an intricate regulatory scheme designed to protect the interests of third parties (depositors, creditors and the banking public) which were not privy to the bank's wrongful conduct. *Id.* The court held that "that scheme would be frustrated by imputing the bank's inequitable conduct to the receiver, thereby diminishing the value of the asset pool held by the receiver and limiting the receiver's discretion in disposing of the assets." *Id.*

The court finds the reasoning in *Comeau* and *O'Melveny* persuasive and fully applicable to this case.[5] For these reasons, and consistent with the defendant's own stated position of intention, the court concludes that the defendant may not impute the negligence or intentional acts of the former directors and officers to the plaintiff FDIC.

## VI. Defendant's Ability to Apply Comparative Fault Principles to Compare His Fault with the Officers and Directors of the Bank in Apportioning Fault.

■ It is on this issue that the parties have vigorously locked horns. Defendant asserts that he is entitled to compare his alleged negligence with the negligence of the other directors and officers of the Bank under the Kansas comparative fault statute, K.S.A. § 60–258a, for the purpose of apportioning fault. Plaintiff argues that the same public policy considerations that prevented defendants from imputing fault to the FDIC in *Comeau* and *O'Melveny* should also apply to bar application of the Kansas comparative fault statute in this instance. In effect, the plaintiff wants to avail itself of the benefits of joint and several liability (without the risk of the bar of contributory negligence), which principle Kansas law has abandoned in the context of claims such as these. The court disagrees with the plaintiff on this issue and denies its motion to that extent.

The public policy concerns enumerated in *Comeau* and *O'Melveny* are not as strong when defendant is not attempting to attribute fault to the FDIC. The attribution of fault, if successful, could bar the FDIC from recovering anything from a wrongdoer because of wrongful conduct of others which would be imputed to it. Comparison of fault with those others directly, and not attributing it to the FDIC, is a different process, which squares with public policy notions of fair accountability for losses caused by prorating those losses according to amount of culpability.

Unlike the situations in *Comeau* and *O'Melveny*, where a defendant with some degree of fault could reap a windfall by totally escaping liability, application of the comparative fault statute will result in the defendant being accountable for the exact amount of fault that a jury finds is actually attributable to him. Thus, the public policy reasons stated in *Comeau* and *O'Melveny* regarding a defendant escaping liability for his actions by attributing his fault to an innocent party are not applicable. In *Comeau*, a pre-comparative fault case which would have been governed by the application of the defense of contributory negligence, attribution by the jury of even one percent of the fault to the FDIC would have allowed the accountants to escape any liability altogether. Likewise, the defendant in *O'Melveny* attempted to impute the wrongful acts of officers to *completely defeat* the malpractice claim of the FDIC, relying on various equitable defenses. Similarly, if in applying the comparative fault statute the fault of the officers and directors were attributed to the FDIC here, then assessing by the jury of fifty percent or more of the fault to them would completely bar the FDIC from recovery, even if the defendant were also found to be as much as fifty percent at fault. On the contrary, application of comparative fault within such attribution in this case will not allow defendant to reap a windfall and escape proportionate liability for so much of the fault as he may have caused. Rather, his liability will be in direct proportion to his percentage of fault vis a vis the other directors and officers.

The court also notes that application of comparative fault principles, as a general rule, does not limit the FDIC's ability to obtain judgment for its damages in full. The FDIC must simply make knowing and rea-

---

**5.** *But see F.D.I.C. v. Gantenbein,* 1992 WL 279772 (D.Kan.1992).

soned decisions as to which prospective parties to sue, making sure that all those whose fault contributed to the losses are parties to the action. In fact, by forcing the FDIC to sue all those whose negligence contributed to a financial institution's losses, application of comparative fault principles would eliminate any hypothetical incentive to pick and choose its defendants for any improper reason.

Strong policy reasons influenced the State of Kansas to enact its comparative fault statute. Those policy reasons included a desire to impose individual liability based on the proportional fault of all parties to an occurrence and a desire that all litigation arising out of a certain circumstance take place in one action. *See Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978); *Mick v. Mani,* 244 Kan. 81, 766 P.2d 147 (1988). Similarly, the defendant has a strong interest in having his negligence compared to that of those officers and directors of the Bank whose negligence may have contributed to the plaintiff's injury. The court finds no strong public policy argument on behalf of the FDIC that would override the normal application of the Kansas comparative fault statute. Application of the comparative fault statute will lead to the most equitable distribution of fault to all parties.

In *F.D.I.C. v. Clark,* 978 F.2d 1541 (10th Cir.1992), the court applied the Colorado comparative fault statute under similar factual circumstances. In *Clark,* the defendant attorneys were not involved in a fraudulent scheme that caused loss to the bank, but were alleged to have been negligent in not uncovering or preventing the fraud. The jury in *Clark* was permitted to apportion 14% liability to one of the defendant attorneys and 5% to the other attorney. The remainder of the liability was allocated to others not named in the case, including the bank's chairman of the board, five directors, the president, and the vice-president of the bank. The Tenth Circuit found that the trial court had properly apportioned the damages under the Colorado proportionate liability statute.

Although the court in *Clark* did not specifically address the policy arguments presented by plaintiff in this case, the *Clark* court did discuss the *O'Melveny* case in denying defendant's contention that they could not be liable because the fraud and dishonesty of the directors should be imputed to the FDIC. Thus, the circuit court was aware of the policy arguments that could be made from *O'Melveny,* and did not mention any inconsistency with applying the Colorado proportionate liability statute. Our decision to apply the Kansas comparative fault statute in this case is consistent with the application of the Colorado proportionate liability statute in *Clark* that was implicitly approved by the circuit court.[6]

This decision allowing the defendant to compare the fault of the other directors and officers applies only to the FDIC's negligence claims. At the hearing on the FDIC's motion, the parties acknowledged that they had not briefed the applicability of the comparative fault statute to the FDIC's claim of breach of fiduciary duty, and that they would like the opportunity to do so. The parties are therefore directed to file any motions regarding the applicability of the Kansas comparative fault statute to the FDIC's breach of fiduciary duty claim on or before the deadline for filing motions in limine.

IT IS, THEREFORE, BY THE COURT ORDERED THAT plaintiff's motion for summary judgement (Doc. # 76) is granted in part and denied in part. The motion is granted as to defendant's statute of limitations and failure to mitigate defenses, as well as to the ability of the defendant to impute the negligence of the officers and directors of the Bank to the FDIC. The motion is denied as to defendant's ability to apply the Kansas comparative negligence statute to compare his negligence with that of the directors and officers of the Bank for the purpose of apportioning fault. Additionally, the parties are directed to file briefs regarding the applicability of the Kansas comparative fault statute

---

**6.** At oral argument, the court was referred to the Tenth Circuit decision in *Federal Sav. & Loan Ins. Corp. v. Ferguson,* 982 F.2d 404, (10th Cir. 1992). However, *Ferguson* does not aid the court in its determination in this case because the public policy issue was neither raised nor instructed on in the district court and the Tenth Circuit declined to consider the issue. This court does not draw any inference therefrom.

to the FDIC's breach of fiduciary duty claim on or before the deadline established for the filing of motions in limine.

IT IS SO ORDERED.