### In re SUNRISE SECURITIES LITIGATION.

#### MDL No. 655.

United States District Court,
E.D. Pennsylvania.

April 13, 1993.

Squire, Sanders & Dempsey, Donald T. Bucklin, Scott T. Kragie, John B. Bulgozdy, Washington, DC, for plaintiff F.D.I.C.

Ballard, Spahr, Andrews & Ingersoll, Alan J. Davis, Robert McL. Boote, Donald P. Alexander, Philadelphia, PA, for defendant Deloitte, Haskins & Sells.

## MEMORANDUM

O'NEILL, District Judge.

### I. *Introduction*

In 1986, the Federal Savings and Loan Insurance Corporation ("FSLIC") in its corporate capacity brought this action against the former attorneys and former officers and directors of the Old Sunrise Savings and Loan Corporation.[1] In January, 1989, FSLIC amended its complaint and added Old Sunrise's former independent auditors, Deloitte, Haskins & Sells, as a defendant.[2] Deloitte filed an Answer, Affirmative Defenses and Counterclaims. The FSLIC, now the Federal Deposit Insurance Corporation ("FDIC"),[3] has moved to dismiss Deloitte's Counterclaims and to strike certain of its Affirmative Defenses. For the reasons that follow, I will grant FDIC's motion.

### II. *Background*

Old Sunrise was a Florida corporation chartered as a capital stock savings and loan association on March 10, 1980. On July 18, 1985, the Federal Home Loan Bank Board ("FHLBB") determined that Old Sunrise was insolvent and appointed the FSLIC as receiver. That same day, FSLIC as receiver organized a new federal savings and loan association, New Sunrise, and transferred substantially all of the Old Sunrise assets and liabilities to New Sunrise. By the Assignment and Agreement of January 2, 1986, New Sunrise assigned to FSLIC–Corporate Old Sunrise's causes of action against its officers, directors, attorneys, accountants and appraisers. On September 12, 1986, the FHLBB declared New Sunrise insolvent and appointed FSLIC as receiver. *See In re Sunrise Securities Litigation*, 131 F.R.D. 450, 452–53 (E.D.Pa.1990).

On September 2, 1986, FSLIC in its corporate capacity filed suit against Old Sunrise's former officers and directors and its former attorneys, Blank, Rome, Comisky & McCauley.[4] On January 19, 1989, after terminating an existing standstill agreement, FSLIC served an Amended Complaint and added Deloitte as a defendant.

### A. FDIC's claims against Deloitte

FDIC's claims against Deloitte are contained in Counts IX and X of its Amended Complaint. Count IX alleges that Deloitte breached its engagements to perform audits of Sunrise's financial statements for the years ending June 30, 1983 and June 30, 1984 and to prepare other financial reports relating to these time periods. FDIC alleges that Sunrise's financial statements were not pre-

---

1. FSLIC's case was one of three groups of claims that were consolidated for pretrial proceedings in this multidistrict litigation. In addition, a class of Sunrise shareholders brought thirteen suits under the Securities Exchange Act of 1934 and under state common law and a class of depositors brought an action seeking recovery of their uninsured deposits. On October 17, 1990, the Court of Appeals for the Third Circuit affirmed this Court's Order granting summary judgment in favor of the defendants and dismissing plaintiff's complaint in the depositors' case. *See In re Sunrise Securities Litigation*, 916 F.2d 874 (3d Cir.1990).

2. Deloitte, Haskins & Sells since has merged with another accounting firm and is now named Deloitte & Touche.

3. Since the filing of its motion, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, § 401, 103 Stat. 183, 354 (1989), dissolved the FSLIC. By Order entered on February 1, 1990, the FDIC was substituted for FSLIC in this litigation.

4. On May 29, 1990, I entered an Order approving a settlement agreement between FDIC and defendants Blank Rome, Michael D. Foxman, M. Kalman Gitomer, Kenneth Treadwell and Edward E. Fitzgerald, Jr. and between the plaintiffs in the Securities Cases and these defendants.

pared in accordance with generally accepted accounting principles and did not present fairly the financial condition of Sunrise. Amended Complaint at ¶ 285. FDIC contends that Deloitte's audits did not disclose that Sunrise's revenues were overstated; that its income relating to ADC loans was overstated; that its loan loss reserve was understated; and that Sunrise failed to account adequately for the speculative nature of its ADC loan portfolio. *Id.* Count X asserts that these alleged failings amounted to professional negligence. *Id.* at ¶ 295.

## B. Deloitte's Counterclaims

In its First Counterclaim, Deloitte asserts claims for intentional misrepresentation, negligent misrepresentation and tortious interference by FSLIC in August and September, 1984 which, according to Deloitte, directly affected the issuance by Deloitte in September, 1984 of its audit report on Sunrise's financial statements for the year ended June 30, 1984.[5]

Deloitte alleges that, at the time it was performing its audit of Sunrise in the spring of 1984, a team of examiners from FSLIC and the State of Florida were conducting an independent regulatory examination on the premises of Sunrise. According to the Counterclaim, the examination focused on Sunrise's financial condition and lending practices, including but not limited to the adequacy of appraisals and the sufficiency of Sunrise's loan loss reserve. Deloitte's First Counterclaim for Recoupment, at ¶¶ 7-8. As part of their examination, the examiners ordered re-appraisals of thirteen major Sunrise loan properties. *Id.* at ¶ 9.

The First Counterclaim alleges that because of the contemporaneous FSLIC examination Deloitte decided, as part of its audit procedures, to make inquiry of the examiners regarding the status of the re-appraisals and

the results of the examination. *Id.* at ¶ 10. In September, 1984, prior to the issuance of its audit report on the June 30, 1994 financial statements of Sunrise, Deloitte asked FSLIC whether the results of the examination and the re-appraisals would result in material adjustments to Sunrise's financial statements. *Id.* at ¶ 11. According to the Counterclaim, in response to Deloitte's inquiry, FSLIC represented that:

(a) the second [i.e., the May, 1984] examination of Sunrise was not complete;

(b) the examination report and re-appraisals had not yet been received; and

(c) FSLIC was unaware of any adjustments in the financial statements of Sunrise which would result from the second examination or the re-appraisals.

*Id.* at 12.

Sunrise made similar inquiries of FSLIC and the responses to those inquiries—that no material adjustments in Sunrise's net worth would occur as a result of the FSLIC examination—were incorporated in Footnote 15 of Sunrise's financial statements as of June 30, 1984. *Id.* at ¶ 13. Relying on this information, Deloitte then issued its audit report. *Id.* at ¶ 16.

Deloitte alleges that FSLIC knew these affirmative statements were false in that re-appraisals had indicated an increase in loan loss reserve which mandated adjustments in Sunrise's financial statements. *Id.* at ¶¶ 14-15.[6] Deloitte further claims that FSLIC knew or should have known that Deloitte would rely on those statements. *Id.* at ¶ 15. Deloitte alleges that the affirmative misrepresentations by FSLIC "substantially impeded or interfered with Deloitte's audit of Sunrise's financial statements" for the year ended June 30, 1984. *Id.* at ¶ 22.

---

**5.** Deloitte alleges that it brings the First Counterclaim in recoupment to reduce any valid direct claims asserted against it by FSLIC (now FDIC).

**6.** In its supplemental memorandum opposing the FDIC's motion, Deloitte argues that hearings before Congress have revealed that, at the time Deloitte made its inquiry of FSLIC, at least nine of the thirteen re-appraisals had been received and that those re-appraisals indicated an addi-

tional $8.6 million in loan loss reserves, more than double the prior reserve. *See, Impact of Faulty and Fraudulent Real Estate Appraisals on Federally Insured Financial Institutions and Related Agencies of the Federal Government:* Hearing Before Subcommittee of the Committee on Government Operations, 99th Cong., 1st Sess. at, *e.g.,* 136, 1624 (1985).

According to the Counterclaim, when the examination report was finally released in 1985, the information resulted in (a) the removal of Sunrise's senior management; (b) a material reduction in Sunrise's net worth; and (c) a Second Supervisory Agreement. *Id.* at ¶ 17.

Deloitte argues that the Second Counterclaim arises from FSLIC's *de facto* takeover of Old Sunrise in April, 1985 as a result of the Second Supervisory Agreement, prior to FSLIC's appointment as receiver.[7] Among other things, Deloitte charges that FSLIC: caused the resignations of the president, chief lending officer and chief compliance officer of Sunrise; caused the resignation of senior experienced lending personnel of Sunrise; caused the resignation of most of Sunrise's experienced "work-out" personnel; and completely disabled Sunrise management from prudently administering Sunrise's loan portfolio. Deloitte's Second Counterclaim in Recoupment, at ¶¶ 5–10.

In addition, the Counterclaim alleges that FSLIC took over day-to-day control of such administration and managed Sunrise in a reckless, arbitrary and imprudent manner. *Id.* at ¶¶ 11–12. Deloitte claims that by superseding the remaining management of Sunrise and taking over its operations no later than June, 1985, FSLIC caused a cessation of all attempts to work out loans and all loan disbursements. *Id.* at ¶ 14. Allegedly, FSLIC caused the shutdown of virtually every major Sunrise construction project, triggered defaults by borrowers and caused a run by Sunrise depositors. *Id.* at ¶ 15.

The Second Counterclaim concludes that as a foreseeable result of the FSLIC takeover "FSLIC caused or substantially contributed to the insolvency of Sunrise. Said wrongful conduct proximately resulted in injury to [Deloitte]." *Id.* at ¶ 16.

Deloitte asserts the Third Counterclaim against FDIC as successor-in-interest to Sunrise. Based on the allegations of the indictment of *United States v. Jacoby,* Crim. No. 87–6034, in the United States District Court for the Southern District of Florida, and the subsequent convictions of Robert C. Jacoby, the president of Old Sunrise, and Thomas Skubal, the vice president of Sunrise Mortgage Corporation, a wholly-owned subsidiary of Sunrise, Deloitte alleges that Jacoby, Skubal and William Frame committed intentional and negligent acts of fraud and deceit on behalf of Sunrise, which acts were intended to, and had the effect of, impeding, frustrating and interfering with Deloitte's audit of Sunrise. Deloitte's Third Counterclaim, at ¶ 3.[8] This Counterclaim seeks an affirmative recovery against FDIC as successor-in-interest to Sunrise for all damages inflicted upon Deloitte by the criminal and negligent acts committed by the senior management of Sunrise on behalf of the institution.

## C. Deloitte's Affirmative Defenses

FDIC also moves to strike certain of the affirmative defenses asserted by Deloitte. The affirmative defenses at issue, which essentially fall into four groups, are as follows:

1. Deloitte's Sixth Affirmative Defense, which is based on the comparative negligence of Old Sunrise's management, and the Twenty–First Affirmative Defense, which enumerates various defenses against FDIC as successor-in-interest to Sunrise.

2. Deloitte's Seventh and Tenth Affirmative Defenses, which, in effect, allege that FDIC is "equitably estopped" from suing Deloitte by reason of the conduct charged in Deloitte's First Counterclaim.

---

7. As with the First Counterclaim, this claim of Deloitte does not seek damages in excess of any liability which Deloitte may have to FDIC.

8. Jacoby was convicted of one count of conspiring to misapply bank funds, seven counts of misapplying funds, five counts of making false statements in documents relating to loan transactions and two counts of making false entries in loan delinquency reports, which involved loans made to two of Sunrise's largest borrowers, William Frederick and Thomas Moye. *See U.S. v. Jacoby,* 955 F.2d 1527, 1530 (11th Cir.1992). Skubal was convicted of one count of conspiring to misapply funds and four substantive counts of misapplying funds. *Id.* Frame, the third indicted officer, suffered a heart attack during trial and his case was severed. *Id.* His retrial has yet to take place. In *Jacoby,* the Court of Appeals for the Eleventh Circuit affirmed the convictions of Jacoby and Skubal. *Id.* at 1544.

3. Deloitte's Fourth, Eleventh, Thirteenth and Seventeenth Affirmative Defenses, which are based on the imputation to FDIC's predecessor-in-interest, *i.e.,* Old Sunrise, of the criminal and negligent acts of former senior Sunrise management.

4. Deloitte's Twentieth Affirmative Defense, which incorporates by reference defenses asserted by Deloitte's co-defendants, some of which were stricken by this Court in a July, 1987 decision.

### III. *Discussion*

#### A. The First and Second Counterclaims

FDIC argues that the Court lacks subject matter jurisdiction over Deloitte's First and Second Counterclaims because they are barred by the doctrine of sovereign immunity unless brought pursuant to the terms of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* Deloitte responds that its First and Second Counterclaims are claims in recoupment which are not barred because when a federal agency institutes an action it waives the defense of sovereign immunity as to all counterclaims in recoupment.

■ The FTCA is the exclusive remedy for tort claims against the federal government. 28 U.S.C. § 2679; *Federal Deposit Ins. Corp. v. Cheng,* 787 F.Supp. 625, 631 (N.D.Tex.1991). Under the FTCA, claims against a federal agency normally must be brought against the United States and not the agency. *Federal Savings and Loan Ins. Corp. v. Burdette,* 696 F.Supp. 1183, 1185, n. 2 (E.D.Tenn.1988).[9] There is an exception to this rule, however: where a federal agency brings a suit the defendant may counterclaim against the agency for recoupment. *Federal Deposit Ins. Corp. v. Lattimore Land Corp.,* 656 F.2d 139, 143 (5th Cir.1981); *Burdette,* 696 F.Supp. at 1185, n. 2; *see also Livera v. First Nat'l State Bank,* 879 F.2d 1186, 1195–96 (3d Cir.1989).

■ Recoupment is defined as "the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising

out of the" transaction or occurrence giving rise to the plaintiff's claim. *Federal Savings and Loan Ins. Corp. v. Smith,* 721 F.Supp. 1039, 1042 (E.D.Ark.1989). In *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir. 1967), the Court held:

> [W]hen the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims; but the sovereign does not waive immunity as to claims which do not meet the "same transaction or occurrence test" nor to claims of a different form of nature than that sought by plaintiff....

*Id.* at 488.

■ Thus, a claim for recoupment is akin to a compulsory counterclaim. Fed.R.Civ.P. Rule 13(a) requires that compulsory counterclaims be brought so that all related controversies between the parties to a single suit may be resolved at one time. *Banco Nacional De Cuba v. Chase Manhattan Bank,* 658 F.2d 875, 885 (2d Cir.1981). The assertion of what is alleged to be a compulsory counterclaim requires that the counter-defendant and the plaintiff be the same entity, and, as a result, if a party sues in one capacity the defendant may not counterclaim against plaintiff in another capacity. *Id.*

The FDIC argues that Deloitte's First and Second Counterclaims are not compulsory counterclaims in recoupment because they are brought against FDIC as regulator and not FDIC as assignee of Sunrise's claims and thus have not been brought against the party who has asserted the original claim. Deloitte asserts that the Counterclaims are made against FDIC–Corporate, the entity that owns the claims against Deloitte and the real-party-in-interest.

9. The FDIC is a federal agency within the coverage of the FTCA. 28 U.S.C. § 2671.

It is well-settled that the FDIC can operate in separate and independent capacities. *Cheng*, 787 F.Supp. at 634; *Federal Deposit Ins. Corp. v. Berry*, 659 F.Supp. 1475, 1481 (E.D.Tenn.1987) (FDIC–Receiver and FDIC–Corporate are two separate entities). Courts repeatedly have recognized that counterclaims cannot be asserted against the FDIC in a capacity other than that in which it brings the action. *See Cheng*, 787 F.Supp. at 634; *Smith*, 721 F.Supp. 1039, 1042–43 (E.D.Ark.1989).

In *Federal Deposit Ins. Corp. v. Manatt*, 723 F.Supp. 99 (E.D.Ark.1989), the FDIC in its corporate capacity purchased from the FDIC as receiver certain assets and interests of an insolvent bank and, as assignee, brought suit against various officers and directors of the bank. Defendant Williams filed a counterclaim alleging that the FDIC negligently supervised the Bank's operations, was negligent in liquidating the Bank's assets and made false representations. The Court rejected Williams' contention that his counterclaim was compulsory because it was "directed towards the FDIC's acts as a federal regulator, not to FDIC's status as assignee of the Bank's claim" and thus, the counterclaim was "not asserted against the 'same party' as plaintiff...." *Id.* at 103. Moreover, for the same reasons the Court held that Williams' counterclaim was not one for recoupment. *Id.* at 104.[10]

In *Cheng*, 787 F.Supp. at 625, the FDIC brought suit as the assignee of the claims of Guaranty Federal Savings and Loan Association and defendants E.F. Hutton and Shearson Lehman Hutton Holdings, Inc. filed a counterclaim seeking recoupment from the FDIC for any damages for which defendants were found liable.

The Court held that Hutton's counterclaim did not meet the requirement of Fed.R.Civ.P. Rule 13(a) because it was directed toward the Federal Home Loan Bank Board's ("FHLBB")[11] and FSLIC's acts as a federal regulator and not toward the FDIC in its capacity as assignee of Guaranty's claim. *Id.* at 632. Because Hutton's counterclaim "concerns only the regulatory activities of the FHLBB," the allegations did not state a claim, "for recoupment or otherwise," against the FDIC and was not asserted against the "'same party' as Plaintiff." *Id.* at 632–33.

As is explained in *Federal Deposit Ins. Corp. v. Berry*, 659 F.Supp. 1475 (E.D.Tenn. 1987), where the FDIC brings an action as an assignee of a failed bank's claims,

> [t]he FDIC in such capacity steps into the shoes of [the failed bank] as plaintiff in this suit. As such the FDIC/Corporation is not subject to defenses asserted against it for actions prior to the assignment.... Since the ... negligence counterclaims involve actions prior to the assignment upon which this action is based, these defenses and counterclaims as a matter of law are not assertable against the plaintiff.

*Id.* at 1482–83. *See also Cheng*, 787 F.Supp. at 634 (quoting *Berry*).

In this case, FDIC brought its claims against Deloitte in its corporate capacity as assignee of Old Sunrise's claims. Although the assignment did not take place until January 2, 1986, Deloitte's First Counterclaim alleges misrepresentations based upon the alleged conduct of federal bank examiners in a 1984 examination and its Second Counterclaim alleges that FSLIC managed Sunrise in a reckless manner after assuming day-to-day control over the institution in April, 1985.

Because the Counterclaims involve alleged actions prior to the assignment upon which the FDIC's action is based and because, pursuant to *Berry*, the FDIC in its corporate capacity is not subject to defenses asserted against it for actions prior to the assignment,

---

10. In addition to finding that Williams' counterclaim was not asserted against "'the same party' as plaintiff," the Court also held that the counterclaim did not arise out of the same transaction or occurrence as plaintiff's claim.

11. Like the FSLIC, the FHLBB was abolished in 1989. As the *Cheng* Court explained, "Prior to the enactment of FIRREA, and during the time the events alleged in the counterclaim took place, the FHLBB was the regulatory agency in charge of federally chartered savings institutions and the operating head of the FSLIC.... With the enactment of FIRREA, the assets and liabilities of the FSLIC, including all claims, were transferred to the newly created FSLIC Resolution Fund," which is managed and separately maintained by the FDIC. *Cheng*, 787 F.Supp. at 628.

these Counterclaims are not assertable against plaintiff. Moreover, I am persuaded by *Manatt* and *Cheng* that FDIC as regulator and FDIC in its corporate capacity as assignee of Sunrise's claims are two separate entities. Because Deloitte's First and Second Counterclaims are not directed at the party that brought this action, the Court lacks jurisdiction to hear them. Accordingly, I will dismiss the First and Second Counterclaims.[12]

#### B. The Third Counterclaim

■ The Third Counterclaim seeks an affirmative recovery against FDIC as successor-in-interest to Sunrise for all damages inflicted upon Deloitte by the criminal and negligent acts committed by the senior management of Sunrise on behalf of Sunrise. FDIC argues that the Counterclaim should be dismissed because it did not bring this action as the successor-in-interest of Old Sunrise and because, even if such conduct could be imputed to an ordinary assignee, the conduct of Old Sunrise's officers and directors cannot be imputed to FDIC. Deloitte responds that FDIC is the successor-in-interest of Old Sunrise and that the actions of Old Sunrise's officers and directors properly should be imputed to Old Sunrise and thus to FDIC.

#### 1. *Successor-in-interest*

FDIC contends that the plaintiff in this action, "FDIC in its corporate capacity as an instrumentality of the United States and as assignee of claims for damages arising out of the wrongful acts of the former officers, directors, attorneys and auditors of Old Sunrise," is not the successor-in-interest to Old Sunrise. FSLIC's Reply to DH & S' Opposition to FSLIC's Motion to Dismiss Counterclaims and to Strike Affirmative Defenses, at 3. It contends further that in the Fiduciary Duty Case plaintiff "is FDIC in its corporate capacity as assignee of Old Sunrise's claims against its officers, directors, attorneys and accountants. . . . Only the claims that are

the subject of this action—just a portion of Old Sunrise's assets—were transferred to FSLIC–Corporate; the liabilities remain with the Receiver." Memorandum In Support of FSLIC's Motion to Dismiss Counterclaims and Strike Affirmative Defenses of DH & S, at 28–29. Accordingly, FDIC argues that it is not the "opposing party" against whom this Counterclaim may be asserted under Fed.R.Civ.P.Rule 13.

Deloitte counters that in reality FDIC is the successor-in-interest to Old Sunrise in that, since New Sunrise no longer exists, FDIC–Corporate ultimately is the only party with an economic stake in the outcome of the case. Moreover, claiming that FDIC–Receiver is only a representative through which the burdens and benefits of claims by and against Deloitte ultimately will flow, Deloitte argues that FDIC–Corporate cannot claim "capacity" distinctions to avoid the fact that it is the real opponent here.

I do not believe that the distinction between successor-in-interest and assignee is determinative in the instant case. Although there is no dispute that FDIC is the assignee of Old Sunrise's claims against Deloitte, it is not readily apparent that the FDIC is certain as to whether it brought this suit as the successor-in-interest to Old Sunrise. In its memoranda in support of its motion, it argues that it is merely the assignee since only a portion of Old Sunrise's assets—the claims that are the subject of this action—were transferred to FSLIC–Corporate and Old Sunrise's liabilities remain with the Receiver. Yet in a prior motion in this action, which dealt with the compelled production of discovery, FDIC (at that time FSLIC) argued that FSLIC–Corporate was successor-in-interest to Sunrise, "since all rights against Blank Rome 'previously held by FSLIC–Receiver have been assigned to FSLIC–Corporate.'" *In re Sunrise Securities Litigation,* 130 F.R.D. 560, 564 (E.D.Pa.1989), quoting FSLIC's Reply to Blank Rome's Response to FSLIC's Motion to Compel, at 2.

---

12. Having reached this conclusion, I do not have to consider FDIC's argument that the Counterclaims do not arise out of the same transaction or occurrence as FDIC's claims or, with respect to the Second Counterclaim, whether the Counterclaim is barred by the "discretionary function" exception to the FTCA.

In light of that statement and in light of the fact that FDIC has not produced any case law in support of its proposition, I conclude that Deloitte's Counterclaim meets the "opposing party" requirement of Rule 13.[13]

### 2. Imputation of officers' and directors' conduct

FDIC also asserts that the Third Counterclaim should be dismissed because the conduct of Old Sunrise's officers and directors cannot be imputed to it.

In *Federal Deposit Ins. Corp. v. Ernst & Young,* 967 F.2d 166 (5th Cir.1992), the FDIC as receiver for the failed Western Savings and Loan Association brought suit against the accounting firm that audited the association, alleging negligence and breach of contract. The FDIC brought the suit only as the assignee of a claim by Western against the auditors.

While recognizing that certain situations require courts to treat the FDIC differently from other assignees, the Court of Appeals for the Fifth Circuit held that the FDIC is not entitled to special protection when it brings a tort claim against a third party on behalf of a defunct financial entity. *Id.* at 170. The Court reasoned: "No statutory justification or public policy exists to treat the FDIC differently from other assignees when the FDIC as a matter of choice in this case has limited its claim to that of an assignee." *Id.*

At least one other Court of Appeals, however, has held that a public policy does exist which justifies treating the FDIC differently from other assignees. In *Federal Deposit Ins. Corp. v. O'Melveny & Meyers,* 969 F.2d 744 (9th Cir.1992), the FDIC as receiver for the failed savings and loan association American Diversified Savings Bank ("ADSB") sued a law firm, claiming professional negligence in connection with its legal advice and services to ADSB. In a summary judgment motion, O'Melveny argued that the conduct of ADSB's wrongdoing officers must be imputed to ADSB, that FDIC as receiver stood in the shoes of ADSB and, therefore, that as an ordinary assignee FDIC was barred from pursuing any claims against O'Melveny.

The Court of Appeals for the Ninth Circuit rejected O'Melveny's arguments, holding that federal, not state, law governs the application of defenses against FDIC. *Id.* at 751.[14] After noting that it was permitted to incorporate state law to provide the federal rule of decision but was not bound to do so, the Court turned to "the age-old principles that equity does equity" and concluded that "equitable defenses good against a bank do not carry over against the bank's receiver." *Id.* The Court explained:

> A receiver, like a bankruptcy trustee and unlike a normal successor in interest, does not voluntarily step into the shoes of the bank; it is thrust into those shoes. It was neither a party to the original inequitable conduct nor is it in a position to take action prior to assuming the bank's assets to cure any associated defects or force the bank to pay for incurable defects. This places the receiver in stark contrast to the normal successor in interest who voluntarily purchases a bank or its assets and can adjust the purchase price for the diminished value of the bank's assets due to their associated equitable defenses. In such cases, the bank receives less consideration for its assets because of its inequitable conduct, thus bearing the cost of its own wrong.
>
> Also significant is the fact that the receiver becomes the bank's successor as part of an intricate regulatory scheme designed to protect the interests of third parties who also were not privy to the bank's inequitable conduct. That scheme would be frustrated by imputing the bank's inequitable conduct to the receiver, thereby diminishing the value of the asset pool held by the receiver and limiting the receiver's discretion in disposing of the assets.

---

13. As Wright, Miller & Kane state:
   Some courts have not simply relied on the stated capacities of the parties but have looked more closely at the representative character of the litigants in order to determine who is actually the real party in interest.

6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1404, at 21 (West 1990).

14. The law firm made its imputation argument in the context of an equitable estoppel defense it had asserted.

*Id.* at 751–52. *See also Federal Deposit Ins. Corp. v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 144 (3d Cir.1991) (recognizing that "[t]he world changes when a bank goes into receivership").[15]

Similarly, in *Comeau v. Rupp,* 810 F.Sup. 1127 (D.Kan.1992), an action brought by the FDIC in its corporate capacity as the successor-in-interest to the Rooks County Savings and Loan Association ("RCSA") against RCSA's accountants, the Court held that the knowledge and concealment of material facts by the owners of a portion of RCSA's stock could not be imputed to the FDIC. Following *O'Melveny,* the Court explained that

> the beneficiaries of a verdict for the FDIC will not be RCSA's stockholders. Rather, [the beneficiary] will be the public, which had no voice in hiring or electing RCSA's officers and directors, nor even in becoming the assignee of certain of the RCSA's assets and liabilities. Thus, the status of the FDIC in this case is more akin to that of a creditor, rather than a stockholder or a voluntary assignee of the association. If the court were to treat plaintiff-FDIC as a stockholder— ... or as simply another assignee—under the wooden approach of the court in *Ernst & Young*—then the public would be made to pay for wrongs that it was in no real position to prevent, and that have been visited upon it by the very persons who owe it a heightened fiduciary duty.... Such a policy would defeat rather than further the tort principle of compensating the victim, while doing nothing either to deter culpable parties from refraining from tortious conduct, or to en-

courage the shareholders to employ more trustworthy corporate managers.

*Id.* 810 F.Supp. at 1142.

In *Federal Deposit Ins. Corp. v. Benjes,* 815 F.Supp. 1415 (D.Kan.1993), the Court reached the same conclusion. In that case, the Kansas State Bank Commissioner determined that the Sylvia State Bank was insolvent, ordered the bank closed and appointed FDIC as receiver. Three years later, the FDIC in its corporate capacity sued Benjes, the bank's attorney, for legal malpractice. Benjes contended that the negligence of the officers and directors of Sylvia should be imputed to FDIC and thus should reduce or eliminate his liability. The Court found the reasoning in *O'Melveny* and *Comeau* "persuasive and fully applicable to this case" and concluded that "defendant may not impute the negligence or intentional acts of the former directors and officers to the plaintiff FDIC." *Id.* 815 F.Supp. at 1419.

■ I also agree with the reasoning in *O'Melveny* and *Comeau* with respect to the special status of the FDIC. The FDIC was not a party to the original inequitable conduct. FDIC–Corporate purchased Old Sunrise's claims against Deloitte from New Sunrise, which was organized by FDIC–Receiver and which prior to assuming Sunrise's assets was not in a position to take action to cure any associated defects or to force the savings and loan to pay for incurable defects. Moreover, as in *O'Melveny,* FDIC–Corporate became assignee as part of an intricate regulatory scheme designed to protect the interests of third parties who also were not privy to the bank's inequitable conduct, which scheme would be frustrated by imputing the bank's inequitable conduct to the FDIC.[16] Thus, as

15. *But see Stratton v. Sacks,* 99 Bankr. 686, 692 (D.Md.1989) (upholding accountants' defense of contributory negligence against trustee because trustee in bankruptcy stands in shoes of debtor and thus "any defense, legal or equitable, which might have been raised against a debtor may be raised against the trustee").

16. I recognize that *O'Melveny* was brought by FDIC in its capacity as receiver and that FDIC in its corporate capacity instituted the instant case. As the Court stated in *Comeau,* a case also brought by FDIC in its corporate capacity, for the purpose of this discussion, "this is a distinc-

tion without significance. The FDIC–Corporation does not in any real sense 'voluntarily' assume the assets and liabilities of the closed association. Congress has created a regulatory scheme that effectively thrusts upon the FDIC, in both its receiver and corporate [capacities], those assets and liabilities of insolvent savings and loan associations that no assuming bank is willing to acquire voluntarily." *Comeau,* 810 F.Supp. at 1142, n. 6. Moreover, in the instant case FDIC–Corporate purchased Old Sunrise's claims from New Sunrise, which was established by FDIC–Receiver, which did not voluntarily step into the shoes of the failed institution.

the Court stated in *Comeau*, the status of the FDIC in this case is more akin to that of a creditor rather than a voluntary assignee of the association. If I were to treat FDIC simply as another assignee, the public would be made to pay for wrongs that it was in no position to prevent.

Accordingly, I conclude that even if the conduct of Sunrise's officers would be imputed to Sunrise so that Sunrise would be estopped from bringing this lawsuit FDIC–Corporate cannot be so estopped. I will dismiss Deloitte's Third Counterclaim.

### C. Deloitte's Affirmative Defenses

■ FDIC also has moved to strike certain affirmative defenses raised by Deloitte. Pursuant to Federal Rule of Civil Procedure Rule 12(f), an affirmative defense may be stricken if it is insufficient as a matter of law. *Federal Deposit Ins. Corp. v. Crosby*, 774 F.Supp. 584, 585 (W.D.Wash.1991); *Burdette*, 696 F.Supp. at 1186. An affirmative defense is insufficient if as a matter of law it cannot succeed under any circumstances. *Crosby*, 774 F.Supp. at 585; *United States v. Hardage*, 116 F.R.D. 460, 463 (W.D.Okla.1987).

#### 1. *Comparative/Contributory Negligence Defenses*

■ Deloitte's Sixth Affirmative Defense asserts that FDIC's claim is barred or must be reduced by the doctrines of contributory or comparative negligence and Deloitte's Twenty–First Affirmative Defense enumerates a number of defenses, including comparative/contributory negligence, that would have been available to Deloitte in a suit brought by Old Sunrise.

##### a. Comparative/Contributory Negligence of FDIC

FDIC argues that courts have stricken the affirmative defenses of comparative or contributory negligence when they are asserted against federal regulators.

In *Federal Deposit Ins. Corp. v. Isham*, 782 F.Supp. 524 (D.Colo.1992), in which the

FDIC in its corporate capacity brought an action against the officers and directors of several failed banks, the Court granted a motion to strike affirmative defenses of contributory or comparative negligence, failure to mitigate damages, waiver, estoppel, ratification, consent, acquiescence, reliance on banking regulators and assumption of risk. Explaining that its holding extended to regulatory actions taken by FDIC/Corporate before an institution is closed, actions taken by FDIC as receiver after closure and actions taken by FDIC/Corporate as assignee of a failed bank's assets, the Court explained that its reasoning stemmed from the policy embodied in the Federal Deposit Insurance Act: [17]

> Put simply, FDIC's own conduct cannot be used to defeat or reduce a recovery to the insurance fund because the FDIC does not act to benefit bank officers and directors. Moreover, FDIC's conduct in fulfilling its mandate involves discretionary decisions that should not be subjected to judicial second guessing.

*Id.* at 532.

Similarly, in *Federal Deposit Ins. Corp. v. Baker*, 739 F.Supp. 1401 (C.D.Cal.1990), the Court granted FDIC's motion to strike several affirmative defenses brought by the former officers and directors of a savings and loan association, but on a slightly different ground than that on which *Isham* was decided. In *Baker*, the Court held that the FDIC owed no duty to the officers or directors when the FDIC's role is either regulator (i.e. when the FDIC acts in its corporate capacity) or receiver of that institution.

In reaching its conclusion, the Court relied on *Federal Sav. & Loan Ins. Corp. v. Roy*, No. JFM–8–1227, 1988 WL 96570, 1988 U.S.Dist. LEXIS 6840 (D.Md. June 28, 1988), which held that FSLIC's alleged negligence was immaterial to the issues in that case because the FSLIC owed no duty to those whose negligence brought the institutions to "the brink of disaster." *Id.* The *Roy* Court stated:

**17.** The Court stated that under the Act the FDIC's sole purpose is to promote the stability of

the banking system.

If this were an ordinary tort case, defendants' argument would have merit. In that event, if the evidence were to show that FSLIC's own negligence (either in connection with general management matters or in working out specific loans) had caused or contributed to its losses, its claims would be barred or reduced. However, this is not an ordinary tort case. Rather, it is one which arises within a special context, invoking special considerations of public policy.

*Id.* The Court reasoned that because the public was the intended beneficiary of FSLIC's actions, "nothing could be more ... contrary to sound policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in attempting to save a failing institution." *Id.*

It was for these same reasons that I granted FDIC's motions to strike the affirmative defenses of comparative or contributory negligence raised by the Outside Directors, Blank, Rome and various other defendants in my Orders dated July 29, 1987. Based on these Orders and the cases cited above, I conclude that to the extent that Deloitte's Affirmative Defenses allege that FDIC's recovery should be reduced or barred because of the comparative or contributory negligence of FDIC they will be stricken.[18]

b. Comparative/Contributory Negligence of Old Sunrise

Although not specifically so stated in the pleadings, in its supplemental memorandum of law in opposition to FDIC's motion to strike the affirmative defenses, Deloitte claims that the Sixth Affirmative Defense refers to the contributory or comparative negligence of Old Sunrise and not of FDIC. Moreover, in a portion of its Twenty–First Affirmative Defense, Deloitte alleges specifically that FDIC's claim is barred in whole or in part by the contributory or comparative negligence of Old Sunrise.

In that regard, Deloitte contends that under Florida law comparative negligence is a defense to or a limitation upon a former audit client's ability to recover against the auditor for malpractice. In support of this proposition, Deloitte cites *Devco Premium Finance Company v. North River Ins. Co.*, 450 So.2d 1216 (Fla.App.), *review den.*, 458 So.2d 272 (Fla.1984), in which the Court held that in an action between the former auditor and a surety company suing in the right of the former auditor's client the auditor could raise the defense of comparative negligence against the surety company.[19]

Even if under Florida law comparative or contributory negligence normally may be raised as a defense, the question remains whether, pursuant to the reasoning of *O'Melveny*, these affirmative defenses may be raised against the FDIC for the conduct of Old Sunrise. Because the defenses have been raised against FDIC, federal law governs. *See O'Melveny*, 969 F.2d at 751. While this does not mean that I may not incorporate state law to give content to the federal rule of decision, I am not bound by Florida law on contributory and comparative negligence. *Id.*[20]

As with the issue of whether the conduct of the institution's officers may be imputed to FDIC, research has found cases which stand for both the proposition that the

18. In addition, for the same reasons I concluded that Deloitte's First and Second Counterclaims should be dismissed, I note that Deloitte's contributory negligence defense is not asserted against the plaintiff in this action. *See Berry*, 659 F.Supp. at 1482–83 (where FDIC brought suit in corporate capacity as assignee of failed bank's claims, counterclaims alleging negligence of FDIC and defense of contributory negligence for actions of FDIC as regulator prior to assignment may not be asserted against plaintiff).

19. Deloitte also cites *Coopers & Lybrand v. Trustee of Archdiocese of Miami/Diocese of St. Petersburg Health & Welfare Plan*, 536 So.2d 278 (Fla. Dist.Ct.App.1988) and *Seidman & Seidman v.*

*Gee*, 1992 WL 73759 (Fla.Dist.Ct.App. April 14, 1992) for this proposition.

20. I note that in the Memorandum and Order issued in this litigation concerning Blank Rome's motion to dismiss the cross-claims that had been asserted against it, I held that federal law applies to the claims brought by FDIC and that federal common law should supply the rule of decision as well. *See In re Sunrise Securities Litigation*, 793 F.Supp. 1306, 1314–15 (E.D.Pa.1992). I also held in that decision that federal common law should supply the rule of decision for the cross-claims asserting implied indemnity. *Id.* at 1315–16.

FDIC is subject to the defense of contributory negligence of the institution and the proposition that it is not.

In *Federal Deposit Ins. Corp. v. Cherry, Bekaert & Holland,* 742 F.Supp. 612 (M.D.Fla.1990), the Court held that a partnership of certified public accountants could assert the defense of contributory negligence on the part of the former bank officers against the FDIC, which brought the action in its corporate capacity as assignee of FDIC as receiver of the failed bank. The FDIC argued that the doctrine stated in *D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), precluded defendants from asserting the defense. The *D'Oench* doctrine prohibits borrowers from asserting defenses such as fraud and alleged oral side agreements between the borrower and failed bank officials which do not appear in the loan documents against the FDIC when it seeks to collect the defaulted loans. *Cherry, Bekaert,* 742 F.Supp. at 614. The *Cherry, Bekaert* Court rejected, however, the FDIC's argument that the *D'Oench* doctrine and its progeny fashioned special rules allowing the FDIC to carry out its function of attempting to stabilize the national banking system, explaining:

> First of all, ... the special protections afforded the FDIC by D'Oench and its progeny are limited in scope. Secondly, in the Court's view the FDIC is in a different posture in this case than in the D'Oench progeny cases. Here, the FDIC has stepped out of its role as a bank's receiver seeking to collect on borrower's debts, and instead is acting in its corporate capacity as an assignee. As the FDIC concedes, under Florida law an assignee takes the assignment subject to any defenses the obligor could raise against the assignor, and Cherry Bekaert could assert its comparative negligence defense against [the bank].... [T]his Court sees no reason that the FDIC in this case should be treated differently than any other assignee.

*Id.* 742 F.Supp. at 615.

More recently, in *Federal Deposit Ins. Corp. v. Gantenbein,* 811 F.Supp. 593 (D.Kan.1992), FDIC as successor-in-interest to First Federal Savings and Loan Association of Beloit, Kansas brought a legal malpractice action against First Federal's attorney. The Court denied FDIC's motion for summary judgment, which asserted that the contributory negligence of First Federal, as imputed to the FDIC, barred recovery on plaintiff's claims for negligence. Citing *O'Melveny* and a case decided in the District of Louisiana, which had not been issued at the time of the Court's ruling, the FDIC then moved for reconsideration of the decision.

The Court denied FDIC's motion. The Court found that *O'Melveny,* which concerned whether fraud by financial institution officers could be imputed to the FDIC and estop the federal agency from bringing claims against attorneys for the institution, was inapposite to a situation in which a defendant asserts the defense of contributory negligence of officers of a savings and loan who allegedly committed negligent acts on behalf of the institution. In declining to expand O'Melveny's holding, the Court stated that it saw "no statutory justification or public policy which requires that the FDIC be treated differently from other assignees on the issue of contributory negligence when the FDIC brings a claim as an assignee of a defunct institution." *Id.* at *8.

In addition, the Court distinguished *O'Melveny* on the ground that in that case the FDIC brought the action as assignee of investors and that in *Gantenbein* the FDIC sued as successor-in-interest and assignee of First Federal, stating "where the FDIC is suing on its own behalf, federal [common] law governs the applicability of defenses to it" but "where the FDIC is suing on behalf of the failed institution, it is treated as any other assignee, and is subject to state law defenses." *Id.* at *6. Accordingly, the Court held that Kansas law of assignments and contributory negligence were applicable to FDIC. *Id.* at *7.

In *Comeau,* 810 F.Supp. at 1142, however, the Court reached a different result. In that case, the accountants wanted to impute the conduct of the stockholders of the institution to the FDIC to set up the defense of contributory negligence. Relying upon the reasoning of the *O'Melveny* Court, the Court con-

cluded that the accountants could not impute to the FDIC the knowledge or conduct of the institution for this purpose. It explained:

> [T]he relief sought by the Accountants would come into play only upon plaintiff's initial showing of some culpable conduct on the part of the Accountants. But by imputing to FDIC the torts of RCSA's officers, the Accountants would shift their liability for plaintiff's losses to the FDIC. Thus, this is not a case where a wholly innocent party will be called upon to pay for a loss caused by another. To the contrary, allowing the FDIC to disavow the wrongful acts of RCSA's former officers prevents culpable parties from transferring liability for their tortious conduct to an entity that is indisputably without fault in bringing about RCSA's losses: the public, in the person of the FDIC.

> In any event, refusing to impute to the FDIC the conduct and knowledge of RCSA's managers does not lessen plaintiff's burden to prove that its losses were caused by the Accountants' wrongful conduct. In other words, the Accountants may still argue that the knowledge and actions of the Comeaus and/or Rupps, although not attributable to the RCSA, were the legal cause of plaintiff's losses, which could not have been prevented by more prudent accounting practices.

*Id.*

In *Crosby*, 774 F.Supp. at 587, the Court reached the same conclusion. In that case, the FSLIC was appointed receiver of a failed state savings and loan association, Lynnwood Savings and Loan, sold its assets and liabilities to another bank and retained potential claims of the failed bank against its directors and officers. In 1989, upon the dissolution of FSLIC pursuant to FIRREA, FSLIC's assets and liabilities were assigned to the FDIC. The FDIC then brought suit against three former officers and directors of the failed bank. The Court rejected defendants' argument that because FDIC was assignee of claims that belonged to Lynnwood it was subject to defenses that could have been asserted against the failed institution:

> Defendants cannot claim Lynnwood's comparative negligence or failure to mitigate damages as defenses to their own conduct. Any breach of duty by a Lynnwood agent or employee other than defendants possibly can support a claim by defendants against that person. However, this court holds as a matter of law that such allegations do not constitute valid affirmative defenses against FDIC.

*Id.* at 587.

I agree with *Comeau* and *Crosby*. Although contributory and comparative negligence are defenses that normally would be assertable against an assignee, I do not believe that the FDIC can be treated simply as an ordinary assignee. If Deloitte were permitted to assert this affirmative defense, the result would be that liability for Deloitte's wrongdoing (if any is proved) could be shifted to the public so that it is required to pay for wrongs that it was in no position to prevent. Moreover, as stated in *Crosby*, refusing to impute to the FDIC the conduct and knowledge of Old Sunrise's officers and directors does not lessen FDIC's burden at trial to prove that its losses were caused by Deloitte's wrongful conduct. Deloitte still may argue that the conduct of the officers and directors, although not attributable to FDIC, were the legal cause of plaintiff's losses and that these losses could not have been prevented by more prudent accounting practices.

Accordingly, I will not apply Florida law with respect to assignments and contributory negligence; pursuant to federal common law, I will strike Deloitte's Sixth Affirmative Defense and the portion of the Twenty–First Affirmative Defense alleging contributory or comparative negligence.[21]

2. *Estoppel and Unclean Hands Defenses*

In its Seventh Affirmative Defense, Deloitte alleges that FDIC's claim is barred

---

**21.** I recognize that this conclusion differs from my ruling in the Order dated July 27, 1987 regarding the FSLIC's motion to strike the affirmative defenses of Blank, Rome, but, in light of *O'Melveny*, *Comeau* and the other cases on this point decided since the date of that Order, I have reconsidered my previous holding. Because the FDIC and Blank, Rome have settled their dispute, this conclusion has no effect on that Order.

because FDIC stands *in pari delicto* with Sunrise and other defendants in this action by reason of the intentionally misleading statements made to Deloitte by FSLIC, its agents and representatives in connection with the issuance of Deloitte's audit report on Sunrise's June 30, 1984 financial statements. In its Tenth Affirmative Defense, Deloitte asserts that the doctrine of unclean hands precludes a recovery by FDIC. The FDIC asserts that these "equitable estoppel" defenses cannot be asserted against it in its corporate capacity. I agree.

For the same reasons that they have struck the defenses of contributory negligence, several courts have concluded that defendants cannot maintain the affirmative defense of estoppel against the FDIC. For example, in *Isham*, 782 F.Supp. at 531–32, the Court held that because banking laws creating the FDIC and prescribing its duties are directed to public good all of the affirmative defenses, including estoppel, should be stricken. As explained above, the Court emphasized that its "holding extends to regulatory actions taken by FDIC/Corporate before an institution is closed, actions taken by FDIC as receiver after closure, and action taken by FDIC/Corporate as assignee of a failed bank's assets." *Id.* at 531. *See also Federal Deposit Ins. Corp. v. Butcher*, 660 F.Supp. 1274, 1282 (E.D.Tenn.1987) (affirmative defenses of estoppel, contributory negligence and mitigation of damages stricken in action brought by FDIC in its corporate capacity); *Federal Deposit Ins. Corp. v. Dempster*, 637 F.Supp. 362, 366–67 (E.D.Tenn.1986) (same); *Baker*, 739 F.Supp. at 1407 (where FDIC's role is regulator or receiver, affirmative defenses, including estoppel, stricken because no duty devolves onto FDIC in favor of officers and directors and appraisers for their otherwise wrongful acts).

Accordingly, I will strike Deloitte's Seventh and Tenth Affirmative Defenses.

### 3. *Defenses Based On Imputed Acts of Sunrise Officials*

FDIC also moves to strike Deloitte's Fourth, Eleventh, Thirteenth, Seventeenth and Twenty-first Affirmative Defenses, which are based on imputation to FDIC (in its corporate capacity) of the wrongful acts of former Sunrise managers, arguing as it did

with respect to Deloitte's Third Counterclaim that the liabilities of Old Sunrise may not be imputed to FDIC. Deloitte restates the argument it made in defense of its Third Counterclaim and asserts as well that even if that counterclaim is dismissed the affirmative defenses should survive in that an assignee takes the assigned claim with all the defenses to it.

For the reasons stated in my discussions of the Third Counterclaim and the affirmative defense of contributory negligence, however, I conclude that public policy dictates that the acts of Old Sunrise's managers should not be imputed to FDIC in its corporate capacity, either in the form of a Counterclaim or an Affirmative Defense. Accordingly, I will strike Deloitte's Fourth, Eleventh, Thirteenth, Seventeenth and Twenty-first Affirmative Defenses.

### 4. *Deloitte's Twentieth Affirmative Defense*

Finally, in its Twentieth Affirmative Defense, Deloitte incorporates by reference the affirmative defenses pleaded against FDIC in its corporate capacity by every other defendant in this case. In light of my Orders dated July 29, 1987, which struck many of the Affirmative Defenses pleaded by other defendants, Deloitte concedes that to the extent that those Defenses were stricken its Twentieth Affirmative Defense should be stricken as well.

### IV. *Conclusion*

For the reasons stated above, I will grant FDIC's motion. I will dismiss the First, Second and Third Counterclaims alleged by Deloitte and will strike Deloitte's Fourth, Sixth, Seventh, Tenth, Eleventh, Thirteenth, Seventeenth, and Twentieth Affirmative Defenses and the Twenty-first Affirmative Defense to the extent that the Orders of July 29, 1987 struck the Affirmative Defenses pleaded by other defendants.